# Case No. 13,446.

## STILLMAN et al. v. WHITE ROCK MANUF'G CO. et al.

[3 Woodb. & M. 539.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1847.

WATERS—DAMS—DIVIDING LINE OF STATE—LICENSE—PRESUMPTIONS—LIMITATIONS—ADVERSE POSSESSION.

1. Where complainants own a dam and water-power, with the adjacent land in Connecticut running to the centre of the river, which is the dividing line from Rhode Island, and the respondents on the Rhode Island side own the land, dam and water-power to the central thread, and also one-half a dam above this, respondents carried half the water from above in a canal round and below complainants' and their dam without permitting it to fall into the

---

[1] [Reported by Charles L. Woodbury, Esq., and by George Minot, Esq.]

lower dam. The parties each hold an undivided half of the water as tenants in common.

2. An injury to a party, half of the water by diversion, may be prosecuted personally in the state where the injury is done, or the injury to the mills, &c., may be prosecuted in the state where they are situated.

[Cited in Foot v. Edwards, Case No. 4,908.]

[Cited in Mannville Co. v. City of Worcester, 138 Mass. 89.]

3. The easement or service which the party has to half the water is not identical with the locality of the property from which derived, and the injury being committed in Rhode Island by respondents, this court has jurisdiction there of the injury, otherwise no remedy by injunction could exist.

4. The code of laws which govern must be that of the state beyond the dividing line, or where the injurious act is done.

5. A crime may continue into two states, and be punishable in both. So also civilly a wrong doer may be held liable, either where the direct act was done, or where the consequential injury took place.

[Cited in Foot v. Edwards, Case No. 4,908.]

[Cited in Com. v. Macloon, 101 Mass. 6; Lindsey v. State, 38 Ohio St. 512; State v. Hall, 114 N. C. 909, 19 S. E. 604.]

6. The remedy by injunction is a specific one, or quasi in rem, and whether the nuisance be in fact in Rhode Island or Connecticut, it must be enjoined against where it is.

7. The statute of limitations in Rhode Island being twenty years, an adverse possession by the respondents of seventeen years is no bar.

8. The statute of limitations of Connecticut does not govern this case; hence the court is not bound by the decisions in Connecticut that fifteen years' exclusive possession, whether adverse or not, furnishes a bar to the action.

9. Possession, to be adverse, must be consistent with the idea of a deed, or raise the presumption of one.

10. A deed is not to be presumed when the evidence is that complainants frequently remonstrated, consulted counsel, and even settled as to the wrong.

[Cited in Chicago & N. W. Ry. Co. v. Hoag, 90 Ill. 349; Lehigh Val. R. Co. v. McFarlan, 30 N. J. Eq. 186.]

11. A presumption is sometimes raised to quiet a long, undisturbed, undisputed occupation.

12. No reasons exist to favor those who seem to be open disseizers, wanton trespassers and wrong doers from the start.

13. One as owner does not lose his right to water, but by twenty years' adverse occupation; no parol license or acquiescence is enough short of that.

[Cited in Union Mill & Min. Co. v. Dangberg, Case No. 14,370.]

14. Under the circumstances of this case a presumption ought not to be raised, even had the statute of limitations run out.

This was a bill in equity [by J. P. Stillman & Co. against the White Rock Manufacturing Company and others] filed in May, 1845.

The complainants were alleged to be citizens of the state of Connecticut, and the respondents; a corporation in Rhode Island, whose members were citizens of this state, and Babcock & More, a mercantile firm belonging to the same state. The bill averred that the plaintiffs were seized of a moiety undivided of a tract of land in Stonington, Conn., and milldam over Pawcatuck river, and buildings thereon, and one-half the water-power thereof, said river being the dividing line between the two states before named. That the respondents, being the White Rock Company, owned one-half, i. e. the eastern half, of another dam two hundred and fifty rods above this, and the eastern half of this, both situated in Westerly, in the state of Rhode Island. That they also owned one-half the power of said river. That the company have made a canal from the upper dam on the eastern side of the river, and diverted a portion of the water above it round the lower dam, running then into the river below. That they leased the use of the same to the firm before named, much to the injury of the complainants. That the respondents have been often requested to desist from thus diverting the water, but they combine together and continue to divert it against equity and good conscience. The complainants pray an injunction against the continuance further and longer of the diversion of the water in this way from the use of the complainants. The bill was on motion, in August, 1845, taken pro confesso for neglect to file an answer. In November after, the firm of Babcock & More put in a plea to the jurisdiction of the court, on the ground that the complainants were citizens of Rhode Island, and not of Connecticut. This was afterwards waived. And on the 11th of November the White Rock Company petitioned for leave to answer, having, under a misconception as to the manner in which the suit was to be conducted, not answered before. This leave was granted on the payment of costs, and an answer was filed, alleging that the titles of the respective parties being as stated in the bill, the said company in 1827 built the canal described at great expense, in order to obtain the benefit of the fall from its commencement to its termination; that they carried through it their half of the water, and continued to do the same, peaceably and of right, adverse to any claim by those owning the other half of the dams described in the bill, during the whole term of fifteen years, by which the plaintiffs became barred from questioning their right to do the same. That the firm of Babcock & More are not lessees of the same, but sole members of the company, and in that capacity rightfully contrive to use the water in the manner before named. The replication denied the sufficiency of the answer.

After taking testimony in A. D. 1846, the case was argued in writing and presented to the court at the May term, 1847.

R. W. Green and J. Whipple, for complainants.

Mr. Dixon and S. Ames, for respondents.

WOODBURY, Circuit Justice. To settle the merits in this case, it will be necessary to ascertain first what are the rights of prop-

erty belonging to each of these parties, contiguous to the Pawcatuck river. The centre of that river is the dividing line between the states of Connecticut and Rhode Island, the complainants owning the land on the Connecticut side, where the lower dam is situated, and the defendants, the White Rock Manufacturing Company, and the firm of Babcock & More, owning the land on the Rhode Island side, at both the upper and lower dams.

What rights this conferred on each as to the water in the stream and its use, is the important inquiry. It is understood that previous to A. D. 1847 the owners on each side had been accustomed to draw water from their dams for their respective uses in nearly equal quantities. This usage was probably in conformity to their rights in law, the bed of the stream being, for aught which appears, regular and uniform, and half being a true exponent of what was proper between them under all the circumstances. In this view neither party would actually own land on either side covered with water beyond the centre of the river, and hence could not maintain any real action, such as ejectment or trespass quare clausum for an entry on land beyond the centre from his side. Tyler v. Wilkinson [Case No. 14,312]; 1 Paige, 448. But it is still manifest that either might be seriously injured by acts commenced or done beyond the centre filum aquae, and on the side opposite to him, as they might there take from the stream more than one-half the water, or divert there large quantities of it, at the upper dam, as in this instance, so as to go round the lower dam before entering the stream again, and not be left to be used at all at the lower dam where the complainants are owners. Either of these acts would be clearly an injury. Cook v. Hull, 3 Pick. 269. Whether such injuries are to be considered as done to the soil and freehold of the owner on the side where that is situated, or to some corporeal easement or right incident to that which he enjoys undivided in the use of the whole water in the river in its natural flow or bed going across the centre, and being entitled beyond it to have the water employed only to the extent of one-half in quantity, would not in most cases be very material. If both sides of the river were situated in the same state, under the same laws, or were within the jurisdiction of the same courts, then to discriminate as to the precise extent and locality of the injury for which the action was brought would often be of little importance. But here, unfortunately, different states and different laws in some respects govern the two sides, and different circuits of this court possess jurisdiction on each side no less than different state courts.

It becomes necessary, therefore, to ascertain now, what is the interest, if any, which the complainants by owning land on the Connecticut side of the river are entitled to in the water on the Rhode Island side; and, indeed, this becomes almost the whole gist of the controversy. After careful inquiry this interest seems to me to be such a corporeal easement or right as has just been described to an undivided half of the water on that side, as well as on the other side. A fence or embankment cannot be usually made in the middle of a large stream where the right to the soil terminates; and if made, it would not correspond with the true interests each owner on the banks has to some extent in all the flowing water between those banks. Hence it is reasonable to regard these interests in the whole stream to be an undivided half, or tenancy in common, and if either side uses or takes out more than half, or at a place above removes and diverts large quantities from coming at all to the dam where the complainants are interested, their proportionate interests in the whole stream are injured, and an action of some kind or other must lie for redress somewhere. Ang. Water Courses, p. 11, § 3, and cases there cited; Webb v. Portland Manuf'g Co. [Case No. 17,322]. Probably different forms of action may lie, as redress is sought for different views of the injury, and these different actions may be brought properly in one state or the other, as they relate more immediately to the acts done as affecting the land and mills the plaintiffs own in Connecticut, or as affecting the undivided share in the water on the Rhode Island side, which the plaintiffs also own. The canal here being on the Rhode Island side, and first injuring the rights of the plaintiffs there to an undivided half of the stream, would seem to justify an appropriate remedy there for that particular wrong.

The injury thus far and in this view may be regarded as committed on interests possessed in the water beyond the centre of the stream, and not entirely on or to the mill and land situated upon one of the banks, or to merely that half of the stream which is contiguous. Such interests may exist in water and its use. 2 N. H. 259. The first and direct injury, then, is to the easement and consequent rights existing beyond the centre. The next consequential injury would be to the mills and land adjoining the stream before reaching the centre on the Connecticut side, and an appropriate remedy for that would lie there. Thus a right of way on land in one state to a farm in another is an interest situated in the first state, and an obstruction to it may be there prosecuted. There is nothing in the nature of easements or services attached to other property which makes them and the property identical in their locality. Nature fixes the locality of each, and one may be in one town, county or state, and the other as well be beyond the dividing line in another, though contiguous, and a suit lie in the other for the injury committed there. 7 Coke, 62.

The chief error in the position of the respondents is in supposing that the plaintiffs have no rights whatever beyond the centre of the river, or no interests to be protected

there. If this be the correct view, which I have adopted, then no difficulty arises as to jurisdiction over the subject of this bill by this court, any more than as to the code of laws that must control our decision. It must be the code beyond the centre, when the action is brought for a violation of the complainants' rights existing beyond the centre, and which is here the code of Rhode Island, and the jurisdiction must be and properly is here for an injury done there; and hence the prosecution must be for that in the courts of Rhode Island, or if pursued in the tribunal of the general government, it must be, not in the Second circuit in Connecticut, but in the First circuit, held in the district of Rhode Island. Nothing can more fully illustrate the propriety of this view in the present instance, than some of the incidents to the peculiar remedy by injunction which is sought here. A party is entitled to that remedy in cases of great and irreparable injuries, inflicted on him, if done without right. Yet here this remedy must be sought in Rhode Island, or it would be of no use. The canal is situated there, which is made to divert the water. The owners of the canal, the supposed wrong doers, reside there, and an injunction issuing in another state or circuit could not be executed there, it being a proceeding quasi in rem. The injured party, then, must be deprived entirely of this legal, summary and useful species of redress, unless rights and jurisdiction to protect them exist beyond the centre of the stream. If this view of the rights of these parties were not thus shown to be entirely sound, it might be reasonable in a case like this to hold a wrong doer liable, either where the direct act is done, or where the consequential injury was felt. 1 Saund. 247; 2 East, 497. And Coke (part 7, p. 58) illustrates by numerous cases that: "When one matter in one county is depending upon the matter in the other county, then the plaintiff may choose in which county he will bring his action." 2 Durn. & E. [Term R.] 240; 7 Durn. & E. [Term R.] 587; 2 Strange, 727.

It is settled that the wrong doer may be sued where the mills are situated, if they are injured, though the cause of the injury may be in another county. Thompson v. Crocker, 9 Pick. 61. The action is then, of course, one in form suited to the local injury felt or experienced to the real estate. The law of the place where the real estate lies, the lex rei sitæ, must, of course, then govern in ordinary real actions brought there for injury to that; as there, in some cases, the sheriff of that county reinstates the party into possession. 1 Paige, 226; Story. Confl. Laws, §§ 364, 581. But the first act done in the present case was done in Rhode Island, and is proceeded against as a private nuisance erected in Rhode Island. The remedy by injunction is a specific one, or quasi in rem, and whether that nuisance be in fact situated in Rhode Island or Connecticut, it must be enjoined against wherever it is, and there alone, and by the laws existing there alone, it must be abated, if at all. Suppose it is proceeded against criminally, it surely may be in Rhode Island, where it is erected, and does the injury. Why not then, if prosecuted in a civil form?

The respondents are the last persons who in equity ought to complain of being called to account where their act is performed, as they are prosecuted there, as now, where they reside, where they lived when inflicting the alleged wrong, where they performed the acts complained of, where it is presumed they looked for vindication by their local contracts or local laws, if by any, and where it is likely they can most cheaply and conveniently defend. I can conceive of crimes, likewise, like civil injuries, which may be prosecuted in two states, though sometimes in different forms, at least, as here. Such is the case of theft continued from one state to another, or the felonious intent indicated in both, or a burglary in one state being a larceny in another, where the property was removed, but no house broken into. So if one fires a gun in one state which kills an individual in another state, there may be the offence of using a deadly weapon in the first state, and committing murder by the killing in the second state. Again, there is sometimes an election in which to prosecute. Thus, if a blow be given in one county, and death follows in another, an appeal of murder lies in either. Dyer, 40; 4 Coke, 426; 7 Coke, 59. If two acts are necessary to constitute an offence, and one is done in one county, and one in another, the prosecution may be in either. So if A in one county injure land in another. Bulwer's Case, 7 Coke, 57; 3 Leon. 143; Scott v. Brest, 2 Durn. & E. [Term R.] 238; Mayor, etc., of London v. Cole, 7 Durn. & E. [Term R.] 583; 1 Chit. Pl. 299. So if one in the state of Ohio draw a bill to defraud and send it to New York by another, and thus commit or complete the fraud there, he can be punished there. People v. Adams, 3 Denio, 190. And to remove all doubt by a reference to a case almost identical with this in principle: "If a man doth not repair a wall in Essex which he ought to repair, whereby my land in Middlesex is drowned, I may bring my action in Essex, for there is the default, as it is adjudged in 7 Hen. IV. c. 8, or I may bring it in Middlesex, for there I have the damage." 7 Coke, 60. It is rather remarkable, however, that a charge of witchcraft in one county of a person residing in another, created some embarrassment in Massachusetts at the close of the seventeenth century. 2 Hutch. Hist. 50. But the very case of a nuisance in one county to land in another is referred to in 7 Coke. 63, where a writ is said to lie in the former. So in Co. Litt. 154a; Fitzh. Nat. Brev. 183k.

It is no answer to all this, that some injury

is done by this canal to property and rights on the Connecticut side, and for which a real action could not be brought, except in Connecticut, and could not be decided, except in conformity to the laws of Connecticut. The complainants in this case have not chosen to resort to such an action anywhere, much less in this state, but on the contrary, have prayed for an injunction against the diversion of the water on the Rhode Island side, and by an unwarranted canal used there to remove large quantities of it entirely from the dam occupied in part by the complainants, and it is manifest that this remedy for this evil must be prosecuted in Rhode Island alone, where the nuisance is situated, and where it is to be restrained, or nowhere. It may be, too, that an action on the case would not lie in Rhode Island for an injury to the real estate situated in Connecticut, unless some important part of the injury was done in Rhode Island. Watts v. Kinney, 6 Hill, 82. But that principle would not militate against the propriety of such an action in Rhode Island for an injury done there to rights in the stream there, and not to the mills situated elsewhere

These points settled, the whole case is settled, because the only defence set up is not a conveyance of a right to the respondents to divert this water, made by deed, will or extent or levy of execution, but an occupation or use of the water for only seventeen years, while the statute of limitations in Rhode Island is twenty, and so is the common prescription. Bullen v. Runnels, 2 N. H. 257; Tyler v. Wilkinson [supra]. If this action had been instituted in Connecticut, or was to be governed by Connecticut laws, the statute of limitations there being but fifteen years, the occupation by the respondents might give them a right, if it was of the character required under their statutes and by their judicial construction of it.

The defendants contend that in Connecticut if it be an occupation kept up, though without a claim of title, and being an open disseizure, and though continued with or under an assertion of right by others, yet not enforced by suit or actual ouster, it would still give a title in fifteen years. Bryan v. Atwater, 5 Day, 181; French v. Pearce, 8 Conn. 439. See other cases as to the use of water exclusively for fifteen years being enough in Connecticut, though not adverse. 1 Conn. 382; 9 Conn. 162; 15 Conn. 366; 2 Conn. 584; 10 Conn. 213. But I cannot yield my assent to the correctness of these decisions, though if this case was to be decided according to the laws of Connecticut we might feel bound by the construction put on her own statutes by her own courts. Greely v. Smith [Case No. 5,750]; Smith v. Babcock [Id. 13,009].

As this point has been much argued, and may be important to these parties in other cases, I would add that in judging of it, whether the title is considered to pass by common law principles, or the presumption of a deed after so long an occupation, or by force of an express statute without reference to any deed, may not be very material always. But if a deed is to be presumed, it could not be presumed here, when the evidence is that the complainants and their grantees frequently remonstrated during the fifteen years against the diversion of the water in this way, and consulted counsel for a prosecution. And it seems settled that usually the possession, in order to avail, must be consistent with the idea of a deed, or must raise a presumption of one. 12 Coke, 5; 2 Wend. 13; 4 Greenl. 508; Ricard v. Williams, 7 Wheat. [20 U. S.] 59; 3 Johns. 100, 269; Matth. Pres. Ev. 296; 6 Cow. 706; Hurst v. McNeil [Case No. 6,936]; Gayetty v. Bethune, 14 Mass. 49; 7 Pick. 198; 8 Pick. 327; 5 Pick. 421; 10 Pick. 295; 12 Pick. 184; Bullen v. Runnels, 2 N. H. 257; 6 East, 216; 1 Camp. 260, 463; 2 Barn. & Ald. 662; 10 Johns. 236; 15 Johns. 218. Though at times a conveyance will be presumed to quiet the title where no evidence exists that it has actually taken place, except the mere length of undisturbed and unquestioned occupation. 1 Spence. Eq. Jur. 503, note; Cowp. 215; 12 Ves. 252. Such an occupation as that, however, was here wanting,

Independent of the Connecticut decisions, I should feel inclined to hold that under their statute, as well as under the Rhode Island statute, such denials of right as existed here by the plaintiffs, and such applications to buy of them as existed here on the part of the respondents, would prevent the long use of the water in this way from ripening into a title, whether by prescription, or the presumption of a deed, or the possession being strictly adverse. Such an occupation would not be wholly peaceable, not always hostile, by the intruder, and these circumstances must usually unite to constitute a good prosecution. See cases last cited, and Watkins v. Peck, 13 N. H. 361; 3 Miss. 529; 8 Clark & F. 231; Ang. Adv. Enj. 44, 47; Gayetty v. Bethune, 14 Mass. 53. One as owner does not lose his rights to water, but by twenty years' adverse occupation. No different occupation and no parol license or acquiescence is enough short of that. Heath v. Williams, 25 Me. 216; 1 Barn. & Ald. 258. An entry or possession continued by consent of the true owner, gives no title. Atherton v. Johnson, 2 N. H. 34; 3 Johns. Cas. 119; 13 Mass. 243.

It is true, that construction should be favorable to long, quiet, undisturbed, undisputed occupation, from useful public considerations, such as the preservation of the public peace or quiet, the prevention of perjuries as to ancient claims, the avoidance of evil from the loss of old papers, the injustice to others by a different course who have trusted and credited long and quiet possession, and those having them. 1 Spence. Eq. Jur. 254; 3 Bl. Comm. 544. But I can see no reasons exist-

ing in this policy to favor those who seem to be wanton disseizors, open trespassers, mere wrong doers from the start, unless the owners have long acquiesced and did not complain nor resist, so long as justly to be barred. If in a case like this, for instance, they were willing to look on and see nearly half the water which they were entitled to have taken away entirely, and not remonstrate for twenty years, they ought to lose these rights for the public quiet, and the presumption should be, that they had conveyed the right or title, as much as if without complaint they saw their field ploughed and reaped for twenty years by others.

The only excuse imaginable in that view, would be, that water enough might still be left ordinarily for the purposes then needed of the plaintiffs, or that the respondents then drew but little. There is some testimony confirming the last hypothesis. But if they did complain, if they took counsel against such an encroachment, though from a friendly and forbearing spirit, not at once resorting to litigation against so high handed an invasion, or if some recognition of their rights was made by one of the owners below, and there is evidence touching all this, it would seem as between two such parties, the statute, if run out, ought not to operate as a bar in favor of the wrong doer. But the whole time of the Rhode Island statute, which is to govern, did not run here, beside these interruptions and disputes during the period it did run. Let an injunction issue.