HOWELL v. JOHNSON et al.

(Circuit Court, D. Montana.    August 20, 1898.)

1. WATER RIGHTS—ON PUBLIC LANDS—GRANTS BY NATIONAL GOVERNMENT.
    The waters of a nonnavigable stream, flowing through the public lands, are a part of the public domain, and the right to their use may be sold or granted by the general government separate from the rest of the es-tate.

2. SAME—VESTED RIGHTS—EFFECT OF STATE LAWS.
    One who has acquired a right to the water of a stream flowing through the public lands by prior appropriation, in accordance with the laws of the state, is protected in such right by Rev. St. §§ 2339, 2340, as against subsequent appropriators, though the latter withdraw the water within the limits of a different state.

This is a bill to enjoin the diversion of the water of a stream to which the complainant claims the right by prior appropriation. Heard on demurrer to the bill.

J. M. Clements, for complainant.

E. N. Harwood and A. J. Campbell, for defendants.

KNOWLES, District Judge. The plaintiff is a citizen of the state of Wyoming. The defendants are all citizens of the state of Montana. In his bill of complaint, plaintiff sets forth that he is the owner of certain lands in the state of Wyoming, and that, for the purposes of irrigating the same, he appropriated certain waters of a creek called "Sage Creek." This creek has its sources in Montana, and flows for some distance within its boundaries before it enters the state of Wyoming. Plaintiff's ditch and point of diversion of said waters are both within said last-named state. Defendants settled along the line of said creek, in Montana, subsequent to the appropriation of plaintiff, and in said state have diverted, it is alleged, the waters of said creek, and prevented the same from flowing down to plaintiff's ditch and land. Plaintiff has sued defendants in this court, and asks to have them enjoined from so diverting said waters. Defendants have filed a demurrer to this bill.

The points presented in this demurrer are that plaintiff, having a water right acquired under and by virtue of the laws of Wyoming, cannot come into this court to enforce the same. It is also claimed that the rights pertaining to this water are under the control of the legislative power of Montana.

Considering the first point, it is urged that the right of plaintiff, being acquired under and by virtue of the laws of the state of Wyoming, can be enforced only as to citizens of Wyoming, and not against citizens of Montana, who have diverted water only in Montana. Is the right claimed by plaintiff one which accrues only by virtue of the laws of Wyoming? Plaintiff alleges that he made his appropriation of the waters of said creek in accordance with the laws of Wyoming and of Montana. Allowing that there could be no appropriation of the waters of said creek made in Wyoming under or by virtue of the laws of Montana, still the allegation that the appropriation was made under the laws of Wyoming remains. According to the bill, plaintiff's appropriation was made on the 1st day of August, 1890. At that date sections 2339 and 2340 of the Revised Statutes were in force. They provided:

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage. All patents granted, or preemption or homesteads allowed, shall be subject to any vested and accrued

water-rights, or rights to ditches and reservoirs used in connection with such water-rights, as may have been acquired under or recognized by the preceding section."

In the case of Basey v. Gallagher, 20 Wall. 670, the supreme court said in regard to this act: "The act of congress of 1866 recognized the right to water by prior appropriation for agricultural and manufacturing purposes as well as mining;" and also decided that if the right to appropriate water for any of the purposes named was recognized by either local customs, or by the legislation of any state or territory, or by the decisions of the court, it would be sufficient. The allegation in the bill that the water was appropriated under the laws of the state of Wyoming would meet the requirements of the said act of congress. Up to the date of the passage of said act of 1866, the right of the prior appropriator to use water, for any of the purposes above named, had, in the arid and mining regions of the West, been recognized as against any other person claiming the same, but not as against the national government. This act, coupled with the act of July 9, 1870, embodied in said section 2340, recognized the right of the prior appropriator of water upon the public domain, even as against the United States and its grantees, if said appropriation was authorized by the statute of the state where the appropriation was made. Black's Pom. Water Rights, § 25; Osgood v. Mining Co., 56 Cal. 571. The rights of plaintiff do not, therefore, rest upon the laws of Wyoming, but upon the laws of congress.

The legislative enactment of Wyoming was only a condition which brought the law of congress into force. The national government is the proprietor and owner of all the land in Wyoming and Montana which it has not sold or granted to some one competent to take and hold the same. Being the owner of these lands, it has the power to sell or dispose of any estate therein or any part thereof. The water in an innavigable stream flowing over the public domain is a part thereof, and the national government can sell or grant the same, or the use thereof, separate from the rest of the estate, under such conditions as may seem to it proper.

In Black's Pom. Water Rights, § 32, it is said:

"As the federal government, in conveying any particular portion of its public domain within a state to a particular grantor, may, as proprietor, annex any condition to the conveyance so that the title will be taken and held subject thereto, so it may, by congressional legislation, adopt any general regulations imposing any limitations or conditions upon the use of the public domain to all persons, or upon all persons, who acquire title to portions of the public domain from the government, and the title so acquired will be held by the grantees thereof subject to such conditions and limitations. Thus, congress may provide by general statute for a right of way over the public lands unsold for the ditches and canals of those who have made a prior appropriation of water, and that all grantees who subsequently acquire portions of this land shall take and hold their titles subject to such existing right of way, or that all grantees of public lands bordering upon a stream shall take and hold their titles subject to any previously existing appropriation of its waters."

These views are supported by the case of Mining Co. v. Ferris, 2 Sawy. 176, Fed. Cas. No. 14,371.

The federal government is not restrained in the disposal of its lands by state laws or state lines. Its laws upon this subject apply to the

lands in one state as well as another. It has made grants of land extending through several states. The state governments cannot restrict it in the primary disposal of its lands. If it may sell and dispose of its land as it may deem proper, there is no reason why it may not sell a part thereof as an incident thereto, such as the use of water flowing over the same. That it has the same right as any real-estate proprietor would be self-evident. It is apparent, then, according to the allegations of the bill, that plaintiff acquired rights by appropriation in Sage creek to which all who have acquired land upon the same, or water rights therein, subsequent to his appropriation, must be subordinate. His rights have the sanction of the national government.

It is urged that in some way the state of Montana has some right in these waters in Sage creek or some control over the same. It never purchased them. It never owned them. In support of this view the court is cited to a great many decisions which pertain to navigable rivers and lakes and tide waters. Here we approach a different subject. There is no claim that Sage creek is a navigable stream. A state, upon its admission into the Union, acquires, by virtue of its sovereign powers, the title to the beds of all navigable rivers, lakes, and tide waters within its boundaries, subject, however, to the rights of commerce and navigation. This title gives it, to some extent, a control over the waters of such rivers and lakes, and the power to establish and determine what shall be the riparian rights which shall pertain to those who hold the title to lands bordering on the same. The case of St. Anthony Falls Water-Power Co. v. Board of Water Com'rs of St. Paul (decided Nov. 29, 1897, by the supreme court) 18 Sup. Ct. 157, was one which pertained to the rights of the plaintiff in that case, as the owner of lands upon the border or banks of the Mississippi river. This river was held to be a navigable stream, and all of the rights of the state of Minnesota grow out of that fact. In that case it was held that the riparian rights of the owner of land bounded by any navigable river depended upon the laws of the state where such land was located. In that case it was not held, nor was it held in any of the cases cited in the decision therein, that the rights of the owner of the land through which any innavigable stream flowed, within the boundaries of any state, depended upon the laws of such state, or that the said owners' right to such waters depended upon such laws, as against one who claimed a right to the same under the laws of congress. To so hold would uphold the view that a state might interfere with the primary disposal of the land of the national government. When a party has obtained title to property from the national government, the state government has no right to destroy that title, except under the power of eminent domain. The state of Montana cannot step in, and say, "The right to the water of Sage creek, which the plaintiff acquired under the laws of congress, you cannot exercise in this state." This would be the taking of plaintiff's property from him without due process of law. It is a recognized rule of law that a person who has appropriated water at a certain point in a stream is entitled to have so much of the waters of said stream as he appropriated flow down to him to the point of his diversion. The

defendants, according to the allegations in the bill, are violating this rule, and should be enjoined.

The idea that there can arise any international water-right question in the case of the appropriation of the waters of an innavigable stream cannot be maintained. The right to such waters, after the national government has disposed of them, must always be a question pertaining to private persons. For these reasons the demurrer in this case is overruled.