RICKEY LAND & CATTLE CO. v. MILLER & LUX.*

(Circuit Court of Appeals, Ninth Circuit. March 4, 1907.)

No. 1,366.

1. WATERS AND WATER COURSES—IRRIGATION—RIGHTS OF APPROPRIATORS—
INCORPOREAL HEREDITAMENTS.

The right of an appropriator of the water of a stream, for the purpose of irrigation, to have the water flow in the river to the head of its ditch, is an incorporeal hereditament appurtenant to the ditch and coextensive with the owner's right to the ditch itself.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Waters and Water Courses, § 15.]

2. SAME—QUIETING TITLE.

A suit to quiet title to a water right for irrigation purposes, and to determine the landowner's right to divert the waters from a stream for such purposes, is in the nature of an action to quiet title to real estate.

3. SAME—RIGHT TO SUE—VENUE—ACTS PARTLY IN DIFFERENT STATES.

Where complainant claimed title by prior appropriation to a certain part of the flow of a river to irrigate its lands in Nevada, and alleged that such rights were being interfered with by defendant, an appropriator of the waters of the same stream in California, of which state defendant was a resident, complainant was entitled to sue to quiet its title to such water right in the federal courts sitting in Nevada.

4. SAME.

The jurisdiction of the Nevada court was not defeated by the fact that defendant set up in its answer and cross-bill that it had an appropriation of water from the same stream in California for the purpose of irrigating lands in that state.

5. COURTS—STATE AND UNITED STATES COURTS—PRIORITY OF JURISDICTION.

Where a federal court sitting in Nevada acquired jurisdiction of a suit to quiet title to an appropriation of water from a stream in that state as against defendant, a resident of California, such jurisdiction would be maintained as against subsequent similar actions brought by defendant for the same purpose in the California state courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 1345.

Pendency of action in state or federal court as ground for abatement in the other, see notes to 47 C. C. A. 205, 73 C. C. A. 521.]

6. SAME—INJUNCTION—ACTIONS IN STATE COURTS.

Rev. St. § 720 [U. S. Comp. St. 1901, p. 581], prohibiting the granting of an injunction by a federal court to stay a proceeding in a state court, does not prevent a federal court having first acquired jurisdiction of the parties and subject-matter of an action from restraining the parties from resorting to proceedings in a state court having concurrent jurisdiction which would defeat or impair the federal court's jurisdiction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 1418–1430.]

7. LIS PENDENS—PURCHASE PENDENTE LITE—EFFECT.

Where defendant corporation acquired its property and water rights in controversy from R. after suit to quiet title to complainant's water rights in Nevada, as against R., had been begun in the federal court of Nevada, and after R. had answered therein and the court had acquired full jurisdiction over both the subject-matter and R., the corporation was a pendente lite purchaser, and bound to abide the judgment in such suit.

Appeal from the Circuit Court of the United States for the District of Nevada.

For opinion below, see 146 Fed. 574.

*Rehearing denied May 20, 1907.

Walker river is a stream flowing from within the state of California easterly into the state of Nevada. Toward its source it divides into two branches, known as the East and West Forks. The junction is in the state of Nevada. The appellant and the appellee are each incorporated, the former having its residence in the state of California, and the latter in the state of Nevada. On the 10th of June, 1902, the appellee filed its bill of complaint in the Circuit Court of the United States for the District of Nevada against Thomas B. Rickey and many other persons. Service of process was had upon Rickey, who thereafter appeared and answered. By said bill of complaint it was alleged, among other things, that complainant therein (the appellee here) was then, and for a long time prior thereto had been, the owner and seised in fee, and in actual possession, of certain lands situated in the county of Lyon, state and district of Nevada, particularly describing them; that Walker river is a natural stream and water course which flows, and from time immemorial has flowed, to, over, upon, and through the said lands, which said lands include the banks, bed, and stream of said river; that at divers times, in said bill set forth, the complainant, its grantors and predecessors in interest, had first appropriated and diverted from said river portions of the waters thereof, amounting in all to a flow of 943.29 cubic feet of water per second, and had carried the same to and upon certain lands, and used the same for the irrigation thereof, and that said complainant was then the owner by such appropriation of certain interests in the waters of said river; such interests being particularly set forth and enumerated. It was then further alleged that Rickey and other defendants in the suit had diverted the waters of said Walker river at divers places above the lands of the complainant, and above the points at which complainant so diverted said water, and that a large portion of the water so diverted by the defendants in said suit was never returned to the stream, and that such defendants were continuing the diversions aforesaid, and had thereby deprived, and were depriving, such complainant of a large portion of said water to which it was so entitled; that each of said diversions so made by such defendants was without right, but that they had diverted said water, and were so diverting the same, under claim of right so to do, adversely to the complainant; that by such diversions complainant had been and was being deprived of sufficient water to irrigate its said lands, and was thereby rendered unable, and so long as said diversions were continued would be unable, to irrigate such lands, which it had theretofore been accustomed to irrigate, and was thereby rendered unable, and would be unable, properly or successfully to cultivate the same, or to raise crops thereon. And it was further alleged that if said defendants, or either of them, had any right to divert any water from the said river, such rights, and each of them, were subsequent and subordinate to the aforesaid appropriations so made by complainant and its grantors and predecessors. The prayer was that the defendants in said suit, including Rickey, be enjoined and restrained from diverting any water from Walker river in subversion of the rights of complainant.

Subsequently, on the 15th day of October, 1904, the Rickey Land & Cattle Company commenced an action in the superior court of the county of Mono, state of California, against the appellee and a large number of other persons, by filing a complaint in said court, whereby it was alleged, among other things, that the said company was, and had been since the 6th day of August, 1902, the owner, in possession, and entitled to the possession of certain lands conveyed to it by Thomas B. Rickey, all situated in the state of California, and that the same constitued an entire contiguous body of land, over, through, and upon which flowed, and from time immemorial had flowed, a branch or tributary of Walker river called the "West Fork," and that said lands and all thereof were, and from time immemorial had been, riparian to said stream, and situated along and bordering thereupon; that the said company was the owner, in possession, and entitled to the possession of such lands, and had the right to divert and appropriate all the waters of said West Fork of Walker River, and its tributaries in the state of California, to the extent of a constant flow of 1,575 cubic feet of water per second. It was further alleged that the defendants in said action, and each of them, including the appellee herein,

claimed some right, title, and interest adverse to the said Rickey Land & Cattle Company in and to said constant flow of 1,575 cubic feet of water per second, or some part or portion thereof; that said right, title, and interest so claimed by such defendants, and each of them, including the appellee, in and to said water, was without right, and that all claims of them, and each of them, to the waters of said West Fork of said Walker River were subordinate and subject to the ownership of said company, and its alleged right to divert and appropriate from said West Fork of Walker River a constant flow of the amount of water specified. The prayer was that the Rickey Land & Cattle Company be decreed to be the owner of the amount of water specified, and entitled to the use and enjoyment of the same, and that appellee and the other defendants therein be subordinated to the interests of the said company in the flow of the waters of said West Fork of Walker River.

On the same day, October 15, 1904, the Rickey Land & Cattle Company commenced another action of like character in the same court, involving 504 cubic feet of water in the East Fork of Walker River, claimed under similar rights, and it was alleged that all of such rights were superior to the rights of defendants therein, including appellee, whatever they might be.

The bill of complaint herein sets forth all these facts and proceedings, and further shows that, after appellee had filed its bill of complaint in the Circuit Court of the United States for the District of Nevada, and after Rickey had appeared and filed his answer therein, he (Rickey), on August 6, 1906, organized and incorporated the Rickey Land & Cattle Company, and conveyed to it all the lands and water rights thereafter claimed by it in the two actions commenced in the superior court of Mono county, in the state of California. Then follows the allegation: "That the issues tendered by said complaints in said two actions so brought by the defendant herein as plaintiff against your orator, and said other persons are, so far as concerns your orator, the same issues which were tendered by the said bill of complaint of your orator so filed in this court, so far as the same related to the defendant, Thomas B. Rickey, in said suit." The prayer is that the defendant be enjoined from prosecuting either of the actions commenced in Mono county, state of California, against the complainant, and for general relief.

The cause having been heard upon the bill and certain affidavits filed in defense, a temporary restraining order was directed to issue, and the appeal is from the action of the court in this regard.

The record contains a supplemental complaint by the Pacific Live Stock Company, showing that it has succeeded to the interests of the appellee, but such complaint serves no essential purpose in the present controversy.

James F. Peck and Charles C. Boynton, for appellant.

W. C. Van Fleet and W. B. Treadwell (Frohman & Jacobs and Frank H. Short, of counsel), for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts). Let us inquire, first, touching the nature of the suit instituted by the appellee as complainant, against Rickey and others, in the Circuit Court of the United States for the District of Nevada, June 10, 1902, for the inquiry will settle the jurisdiction of the court to proceed in that cause, and in one aspect will determine its authority to grant the relief demanded in this cause. In the course of the inquiry, it is important that we first ascertain the nature of the subject-matter of the cause.

Says the court in the case of Lower Kings River Water Ditch Co. v. Kings River & Fresno Canal Co., 60 Cal. 408:

" 'A water course consists of bed, banks and water.' Angell on Water Courses, § 4. The right of plaintiff, as stated in its complaint, to have the water

flow in the river to the head of its ditch, is an incorporeal hereditament appertaining to its water course. Granting that plaintiff does not own the corpus of the water until it shall enter its ditch, yet the right to have it flow into the ditch appertains to the ditch. Real property consists of land, that which is affixed to land, and that which is incidental or appurtenant to land. Civil Code. 658. If the water course, consisting of the bed and banks of the trench, and of the water therein, be real property, the right to have water flow to it is incidental and appurtenant thereto."

So in Construction Co. v. Ditch Co., 41 Or. 209, 215, 69 Pac. 455, 458, 93 Am. St. Rep. 701:

"If the riparian owner grants a right to divert the water and convey it away to and upon the lands of the grantee, the grant becomes an easement appurtenant to such lands, which becomes thereby the dominant estate, and the grant an incorporeal hereditament. If title be acquired by prescription, the estate and the right are the same."

So, also, in Wyatt v. Larimer & Weld Irr. Co., 33 Pac. 144, 18 Colo. 298, 36 Am. St. Rep. 280, Mr. Justice Goddard, speaking for the court, says:

"That a valid appropriation of water from a natural stream constitutes an easement in the stream, and that such easement is an incorporeal hereditament, the appropriation being in perpetuity, cannot well be disputed."

And, after citing Washburn on Easements and Servitudes, and Angell on Water Courses, proceeds:

"The right acquired to water by an appropriator under our system is of the same character as that defined by the foregoing authorities as an incorporeal hereditament and easement. The consumer under a ditch possesses a like property. He is an appropriator from the natural stream, through the intermediate agency of the ditch, and has the right to have the quantity of water so appropriated flow in the natural stream, and through the ditch, for his use."

And, generally, it is held that:

"The right of the prior appropriator to have the water flow in the stream to the head of his ditch is an incorporeal hereditament appurtenant to his ditch, and coextensive with his right to the ditch itself." Willey v. Decker, 73 Pac. 210, 225, 11 Wyo. 496, 100 Am. St. Rep. 939; Smith v. Denniff, 60 Pac. 398, 24 Mont. 20, 81 Am. St. Rep. 408.

Or, putting it in another form, that:

"A right to divert and use the waters of a stream, acquired by appropriation, is a hereditament appurtenant to the land for the benefit of which the appropriation is made." Conant v. Deep Creek & Curlew Val. Irr. Co., 66 Pac. 188, 23 Utah, 627, 90 Am. St. Rep. 721.

See, also, Simmons v. Winters, 21 Or. 35, 27 Pac. 7, 28 Am. St. Rep. 727; Hindman v. Rizor, 21 Or. 112, 27 Pac. 13; Bear Lake & River Waterworks & Irrigation Co. v. Ogden City, 8 Utah, 494, 33 Pac. 135; Tucker v. Jones, 8 Mont. 225, 19 Pac. 571; Sweetland v. Olsen, 11 Mont. 27, 27 Pac. 339; Cave v. Crafts, 53 Cal. 135.

So it follows, as a deduction from these principles, as was said in the Conant Case, that:

"An action, therefore, to quiet the title and determine and to establish the right to divert and use water for such purposes, is in the nature of an action to quiet the title to real estate."

Under the bill there is the assertion of a valid appropriation of the waters of Walker river, for use upon lands in Nevada which are specifically described, and which the complainant owns, and the further averment that the defendants claim a right of diversion and appropriation adverse to that which complainant has acquired; and the prayer is, in effect, that defendants be restrained from the exercise of their alleged right to the injury of complainant. Could there be a plainer case of an attempt to quiet title to the appropriation itself? Although the right to have the water of Walker river flow from above down to and within the complainant's canals and ditches, for use upon its lands, is an incorporeal hereditament, it is, nevertheless, under the foregoing authorities, appurtenant to the realty in connection with which the use is applied. It savors of, and is a part of, the realty itself. The suit, therefore, in its purpose and effect, is one to quiet title to realty. Complainant's diversion being in Nevada, and the use being upon realty situated in Nevada, and the suit being one concerning or pertaining to that realty, it is necessarily local in character, and was properly instituted in the state of Nevada. See Conant v. Deep Creek, etc., Company, supra. The proposition seems so clear that it is scarcely necessary to cite other authorities in its support. And it is equally clear that the courts of one state are without jurisdiction to hear and determine suits instituted in another for the adjustment of adverse claims respecting the legal title to realty, and which pertain to the realty as the subject-matter of the controversy.

There has been much discussion of the legal principle that, as to certain causes arising partly in one jurisdiction and partly in another, the right of action will be entertained in either jurisdiction. The principle is that, where two material facts are necessary to give a good cause of action, and they take place in different jurisdictions, the cause may be said to have arisen in either jurisdiction. Numerous authorities are cited in support of this principle, among which are the following:

"When an action is founded upon two things in different counties, both material to the maintenance of the action, it may be brought in the one county or the other." Com. Dig. "Action," N, 11.

"Where an injury has been committed in one county to real property situate in another, or wherever the action is founded upon two or more material facts which took place in different counties, the venue may be laid in either." 1 Saund. Pl. & Ev. 413.

"Supposing the foundation of the action to have arisen in two counties, I think that, where there are two facts which are necessary to constitute the offense, the plaintiff may, ex necessitate, lay the venue in either." Ashurst, J., in Scott v. Brest, 2 Term R. 238.

And: "When matter in one county is depending upon the matter in the other county, there the plaintiff may choose in which county he will bring his action." And: "If a man doth not repair a wall in Essex which he ought to repair, whereby my land in Middlesex is drowned, I may bring my action in Essex, for there is the default; or I may bring it in Middlesex, for there I have the damage." Bulwer's Case, 7 Coke, 1.

So, in Barden v. Crocker, 10 Pick. (Mass.) 383, in an action brought in the county where the property was damaged for diversion of water in another, it was held that the action could be maintained in either county. So, also, in the case of Foot v. Edwards, Fed. Cas. No. 4,908,

an action for damages for an injury to the mill property of the plaintiff situated in Massachusetts, that the action could be maintained in Connecticut, where the water was diverted to the injury of the mill. And again, in the case of Rundle v. Delaware & R. Canal, 1 Wall. Jr. 275, Fed. Cas. No. 12,139, an action was sustained in New Jersey "for damage done to plaintiff's realty in Pennsylvania." These authorities pertain to actions at law.

The general doctrine of the common law is that an action for injury to real property, as trespass, or case for nuisance, is local, and must be commenced within the county or district in which the land lies. Watts' Administrators v. Kinney, 23 Wend. (N. Y.) 484. This seems to be controlled, however, by the rule above referred to, that, where an act has been committed in one jurisdiction which causes injury to realty in another, a suit may be brought in either. In further support of the latter proposition, Mr. Gould is authority. He says:

"If, however, a tortious act committed in one county occasions damage to land or any other local subject situate in another, an action for the injury thus occasioned may be laid in either of the two counties, at the choice of the party injured. Thus, if, by the diversion or obstruction of a water course in the county of A., damage is done to lands, mills, or other real property in the county of B., the party injured may lay his action in either of those two counties." Gould, Pl. p. 105, § 108.

In case of nuisance, however, where it is sought to abate the nuisance by injunctive process, it is requisite that the suit be instituted in the jurisdiction where the nuisance is maintained, because it is said the remedy is quasi in rem, and must act upon the thing itself which is causing the damage. This was held in the case of Stillman v. White Rock Manufacturing Co., Fed. Cas. No. 13,446 (23 Fed. Cas. 83).

There is but little question that the same rule as to venue in the commencement of suits in equity will apply as in actions at law. It is of primary importance, however, that a cause in equity exist, for, unless it does, the suit cannot be maintained anywhere. A suit may be local or transitory, as well as an action at law; and, if a suit pertains to or is concerning realty as the direct subject-matter of the inquiry, like an action at law in ejectment, it must be commenced in the jurisdiction where the realty is located. But if jurisdiction rests upon an equitable cause, such as multiplicity of suits, irreparable injury, specific performance, rescission, or the like, the suit need not necessarily be local. It may be transitory as actions are transitory, and if the appropriate conditions are present, the suit may be brought, as actions may be brought, in either jurisdiction, and is therefore governed by the same principle. But, as we have heretofore determined, the present suit is one affecting realty, and was therefore local, and for this reason the venue was properly laid in the state of Nevada.

It is well determined that:

"In a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree." Massie v. Watts, 6 Cranch, 148, 3 L. Ed. 181.

Or, as expressed in general terms in the case of Phelps v. McDonald, 99 U. S. 298, 308, 25 L. Ed. 473, that:

"Where the necessary parties are before a court of equity, it is immaterial that the res of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal. It has the power to compel the defendant to do all things necessary, according to the lex loci rei sitæ, which he could do voluntarily, to give full effect to the decree against him. Without regard to the situation of the subject-matter, such courts consider the equities between the parties, and decree in personam according to those equities, and enforce obedience to their decrees by process in personam."

This rule "has been often applied," says the court, in Cole v. Cunningham, 133 U. S. 107, 119, 10 Sup. Ct. 269, 273, 33 L. Ed. 538, "by the Courts of the domicile against the attempts of some of its citizens to defeat the operation of its laws to the wrong and injury of others."

If such be the law where the res is without the jurisdiction of the court, by how much stronger will be its application where the jurisdiction extends over the res as well as to the person. So that the court having jurisdiction of the res—that is, of the thing in controversy, which is the realty in the present instance—has undoubted authority and jurisdiction, having also jurisdiction of the person, to protect the thing against the encroachments of the person, whether those encroachments come from within the state or without.

The appellant's counsel maintain that, because the appellant has set up in its answer and cross-bill to the original suit that it has an appropriation in California for the purpose of irrigating lands in that state, therefore the court in Nevada has no jurisdiction to determine its rights in the state of California. The contention seems to us to be beside the question. The defendant will not be permitted, by thus setting up a cause of suit in the state of California, to defeat the jurisdiction of the court in the state of Nevada. The complainant must be permitted to proceed upon the case made by its pleadings, and the defendant cannot defeat the jurisdiction by alleging that it has rights elsewhere which may conflict with the rights of the complainant. It may be said that the court in Nevada has not the power to quiet the title of the defendant in the state of California. But the defendant has the right to set up its conflicting interests, which arose in California, as a defense against the attempt of the complainant to have its title in Nevada quieted, because the complainant's title must depend upon whether it has the better right as against the defendant—the rights of the parties arising in the states in which their respective interests are found. So that the answer and cross-complaint of the defendant can only operate defensively in the original suit, and not to give the defendant a right to have its title also quieted in the state of California. Though the Nevada court is not authorized or empowered to settle the rights of the parties in the state of California, it may look, nevertheless, under the defensive answer to the appropriation in the state of California, to ascertain and determine whether such appropriation is prior and paramount to the complainant's appropriation, and, if not, then to settle and quiet complainant's title and rights thereto.

That our position may be fully understood, we will extend the discussion a little. The water in the stream, which has a propensity to seek its level, and will continue in its current to the sea, is in strict reality the veritable thing in controversy. It knows not imaginary state or

county lines, and is a thing in which no man has a property until captured to be applied to a beneficial use. The right of appropriation is recognized in law, which means the right of diversion and use. It is the right, not to any specific water, but to some definite quantity of that which may at the time be running in the stream. So the right acquired by an appropriation includes the right to have the water flow in the stream to the point of diversion. The fact of a state line intersecting the stream does not, within itself, impinge upon the right. In other words, the appropriation may still be acquired although the stream is interstate and not local to one state; nor will the mere fact that the stream has its source in one state authorize a diversion of all the water thereof as against an earlier and prior appropriator across the line in another state. On the contrary, one who has acquired a right to the water of a stream by prior appropriation, in accordance with the laws of the state where made, is protected in such right as against subsequent appropriators, though the latter withdraw the water within the limits of a different state. Howell v. Johnson (C. C.) 89 Fed. 556; Hoge v. Eaton (C. C.) 135 Fed. 411; Anderson v. Bassman (C. C.) 140 Fed. 14. So that, in determining the right of appropriation in one state, it may become necessary to ascertain what are the rights in another, and a mere assertion of rights in the courts of the latter state cannot operate to preclude the courts of the former from exercising cognizance over the entire subject-matter before them. The very question that appellant makes was determined in the case of Anderson v. Bassman, supra:

"It is objected by the defendants," says Morrow, Circuit Judge, "that the relief sought by the bill, in determining the rights of the complainants to a specific quantity of the waters of the West Fork of the Carson River, is beyond the jurisdiction of this court, in that it is asking the court to pass upon titles to real property in another state."

And the decision was against the contention. So the decision here must be against appellant's contention upon the point urged.

That the present bill is ancillary to the original suit instituted in the Circuit Court for the District of Nevada is not questioned. It is not infrequent that the state courts come in conflict with the federal courts, and vice versa of the federal with the state, and this where they exercise concurrent jurisdiction. In all such cases it has been firmly established that the court first acquiring jurisdiction of the subject-matter of the action or suit, and of the parties, is entitled to maintain it until the controversy is at an end and the rights of the parties are fully administered, without interference from, and to the exclusion of the other. Pitt v. Rodgers, 104 Fed. 387, 43 C. C. A. 600; Starr v. Chicago, R. I. & P. Ry. Co. (C. C.) 110 Fed. 3. In the maintenance of such jurisdiction, it is a common remedy to invoke the injunctive process, not against the court offending, but against the parties, to restrain them from proceeding therein in antagonism to the jurisdiction first acquired; and the remedy is available either before or after judgment or decree, either to enable the court to render an effective adjudication, or to command full obedience to its mandates. In support of the doctrine generally, we quote from three of the authorities out of many

that may be cited. In Peck v. Jenness, 7 How. 612, 624, 12 L. Ed. 841, the court says:

"It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and, whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but on necessity. For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one, if they dare to proceed in the other. Neither can one take property from the custody of the other by replevin or any other process, for this would produce a conflict extremely embarrassing to the administration of justice."

So in Root v. Woolworth, 150 U. S. 401, 410, 14 Sup. Ct. 136, 138, 37 L. Ed. 1123:

"It is well settled that a court of equity has jurisdiction to carry into effect its own orders, decrees, and judgments, which remain unreversed, when the subject-matter and the parties are the same in both proceedings. The general rule upon the subject is thus stated in Story's Equity Pleading (9th Ed.) § 338: 'A supplemental bill may also be filed, as well after as before a decree; and the bill, if after a decree, may be either in aid of the decree, that it may be carried fully into execution; or that proper directions may be given upon some matter omitted in the original bill, or not put in issue by it, or by the defense made to it; or to bring forward parties before the court; or it may be used to impeach the decree, which is the peculiar case of a supplemental bill in the nature of a bill of review, of which we shall treat hereafter. But where a supplemental bill is brought in aid of a decree, it is merely to carry out and to give fuller effect to that decree, and not to obtain relief of a different kind on a different principle; the latter being the province of a supplementary bill in the nature of a bill of review, which cannot be filed without the leave of the court.'"

And again, in French, Trustee, v. Hay, 22 Wall. 250, 22 L. Ed. 857, Mr. Justice Swayne, speaking for the court:

"It (the bill then pending) is auxiliary and dependent in its character, as much so as if it were a bill of review. The court having jurisdiction in personam had power to require the defendant to do or to refrain from doing anything beyond the limits of its territorial jurisdiction which it might have required to be done or omitted within the limits of such territory. Having the possession and jurisdiction of the case, that jurisdiction embraced everything in the case, and every question arising which could be determined in it until it reached its termination and the jurisdiction was exhausted. While the jurisdiction lasted it was exclusive, and could not be trenched upon by any other tribunal."

The case relied upon by counsel for appellant—Oliver v. Parlin & Orendorff Co., 105 Fed. 272, 45 C. C. A. 200—is in harmony with these authorities; but there the federal court had not acquired previous jurisdiction over the person of the Groesbeck National Bank, which it was sought to enjoin.

The doctrine being thus established, and the jurisdiction of the federal court in the present case having first attached, section 720, Rev. St. [U. S. Comp. St. 1901, p. 581], is without application. As is well known, this section inhibits the granting of a writ of injunction by a federal court to stay the proceedings of a state court.

"It is well settled," says Mr. Bates, in his work on Federal Equity Procedure, § 541, "upon both reason and authority, that the prohibition contained in this statute 'does not apply where the federal court has first obtained jurisdiction, or where, the state court having first obtained jurisdiction, the case has been removed to the federal court. In such cases the federal court may restrain all proceedings in a state court which would have the effect of defeating or impairing its jurisdiction. It extends only to cases in which the jurisdiction has first attached.' If the rule were otherwise, 'after suit brought in a federal court, a party defendant could, by resorting to a suit in a state court, defeat, in many ways, the effective jurisdiction and action of the federal court, after it had obtained full jurisdiction of person and subject-matter.' "

The appellant, the Rickey Land & Cattle Company, has succeeded to all the interest of Rickey, in so far as such interest affects and pertains to the subject-matter of the controversy in the case of Miller & Lux v. Rickey et al (C. C.) 146 Fed. 574. The position is so apparent from Rickey's own affidavit as to put at rest all contention about it. He says:

"That the said Rickey Land & Cattle Company acquired by conveyance from said Thomas B. Rickey all his right, title, and interest to certain water rights, and rights to the use of water; and said water rights, and rights to the use of water, are in part the water rights, and rights to the use of water, described and mentioned in the said complaints in said actions commenced in Mono county; but the said water rights so acquired by the said Rickey Land & Cattle Company from the said Thomas B. Rickey are not the same rights to water, and rights to the use of water, alleged in said complaints in said Mono county in this: that since the conveyance of said lands by Thomas B. Rickey, and said water rights, and the right to the use of water to said Rickey Land & Cattle Company, which conveyance was made, executed, and delivered on the 6th day of August, 1902, the Rickey Land & Cattle Company has at all times appropriated and diverted the water described in the said complaints in said actions commenced in said Mono county for a beneficial purpose, and has used the same for a beneficial purpose, and has diverted, appropriated, and used such water adversely to all the world, and under a claim of right so to do, and has so diverted, appropriated, and used such water continuously, uninterruptedly, notoriously, adversely, exclusively, and peaceably."

The affiant attempts to show wherein the rights that the Rickey Land & Cattle Company now claim are different from those which were conveyed and transferred to it by Rickey himself, and in that attempt it is significant that he shows that whatever difference exists at the present time between the two rights is the result of what the company has done since its acquirement from Rickey, that is, in the way of continuing and increasing Rickey's alleged original appropriations of water, but not to the extent of acquiring any new or different rights, by adverse holding and possession, or otherwise. In other words, the company has merely builded upon the rights obtained from Rickey, without acquiring any new or additional rights. These are the rights that the Rickey Land & Cattle Company is seeking to establish in the superior court of Mono county, Cal., against which it is maintained that the rights of the appellee are adverse and subordinate, and the same rights which the appellee asserts are subordinate to those that it has acquired and is possessed of and owns; so that the issues must needs be the same, and the controversy the same, whether Miller & Lux, the appellee, goes into the Mono county superior court, or the Rickey Land & Cattle Company makes defense in the United States

Circuit Court for the District of Nevada. The Nevada court, therefore, having first acquired jurisdiction, may maintain and exercise it to the end, to the exclusion of the state court in Mono county.

The next and final question relates to the doctrine of lis pendens, and its application here. As to this, there need be but little said. In the case of Mellen v. Moline Iron Works, 131 U. S. 352, 371, 9 Sup. Ct. 781, 787, 33 L. Ed. 178, the court says:

"Purchasers of property involved in a pending suit may be admitted as parties, in the discretion of the court; but they cannot demand, as of absolute right, to be made parties, nor can they complain if they are compelled to abide by whatever decree the court may render, within the limits of its power, in respect to the interest their vendor had in the property purchased by them pendente lite. Eyster v. Gaff, 91 U. S. 521, 524, 23 L. Ed. 403; Union Trust Co. v. Inland Navigation & Improvement Co., 130 U. S. 565, 9 Sup. Ct. 606, 32 L. Ed. 1043; 1 Story's Eq. Jur. § 406; Murray v. Ballou, 1 Johns. Ch. (N. Y.) 566. As said by Sir William Grant, in Bishop of Winchester v. Paine, 11 Ves. 194, 197: 'The litigating parties are exempted from the necessity of taking any notice of a title so acquired. As to them, it is as if no such title existed. Otherwise, such suits would be indeterminable; or, which would be the same in effect, it would be in the pleasure of one party at what period the suit should be determined.' The present proceeding is an attempt, upon the part of a purchaser pendente lite to relitigate in an original, independent suit the matters determined in the suit to which his vendor was a party. That cannot be permitted consistently with the settled rules of equity practice."

The text of 2 Black on Judgments, § 550, seems authoritative. It is as follows:

"It is a general rule that a purchaser of property, * * * who buys pending a litigation concerning it, comes into privity with his vendor, so as to be bound by the judgment in that suit the same as if made a party of record. * * * 'We apprehend it is well settled that he who purchases property pending a suit in which the title to it is involved takes it subject to the judgment or decree that may be passed in such suit against the person from whom he purchases. That he purchased bona fide, and paid a full consideration for it, will not avail against such judgment or decree. Nor will he be permitted to prove that he had no notice of the suit. The law infers that all persons have notice of the proceedings of courts of record. The law is that he who intermeddles with property in litigation does it at his peril, and is as conclusively bound by the results of the litigation, whatever they may be, as if he had been a party to it from the outset.' * * * In a late case it is said that the purpose of the rule is to keep the subject-matter of the litigation within the power of the court until judgment or decree shall be entered, since, otherwise, by successive alienations pending the suit, the judgment or decree could be rendered abortive and impossible of execution. It is also said that two things seem to be indispensable to give effect to the doctrine of lis pendens: (1) That the litigation must be about some specific thing which must necessarily be affected by the termination of the suit, and (2) that the particular property involved in the suit must be so definite in the description that any one reading it can learn thereby what property is intended to be made the subject of litigation."

The conditions present meet every requisite of these authorities. As is apparent from the record the Rickey Land & Cattle Company came into the property and rights of Thomas B. Rickey after the suit to quiet title was begun in the Circuit Court for the District of Nevada, and after Rickey had answered therein, and the court had acquired full and complete jurisdiction both over the subject-matter of the suit and over the person of Rickey. So that the Rickey Land & Cat-

tle Company stands in privity of title with Rickey, and can claim nothing beyond what Rickey could have claimed in the original suit. The company is bound as Rickey would have been bound, and must abide the termination of such suit for the adjustment of the adverse rights claimed to the appropriation of water from Walker river.

These considerations lead to the affirmance of the decree of the Circuit Court, and it is so ordered.