HOGE et al. v. EATON et al.

(Circuit Court, D. Colorado. February 27, 1905.)

No. 4,368.

1. WATER COURSES—DIVERSION FOR IRRIGATION.
   The right to divert running waters for irrigating lands in an arid country is not controlled or affected by political divisions. It is the same in all states through which the stream so diverted may pass.

2. SAME—IN WYOMING AND COLORADO.
   An appropriation of water in the state of Wyoming from a stream which rises in Colorado for irrigating lands in Wyoming is valid as against a subsequent appropriation in Colorado from the same stream for irrigating lands in Colorado.

3. SAME—PRACTICE—POLICE REGULATIONS IN WYOMING.
   In a suit by settlers in Wyoming on a stream which rises in Colorado to restrain the diversion of water from such stream in Colorado, complainants need not aver or prove that they have conformed to police regulations of the state of Wyoming regulating the distribution of water in that state.

4. EQUITY—CROSS-BILL IN AN ANSWER.
   In a suit in equity, a charge in an answer, which is denominated a "cross-bill," may be accepted as a statement of respondents' case, notwithstanding the misnomer calling the answer a cross-bill.

N. E. Corthell, for plaintiffs.

James W. McCreery, John T. Jacobs, and S. C. Downey, for defendants.

HALLETT, District Judge. The bill was filed by six natural persons residing in the valley of Sand creek, in the state of Wyoming, and two corporations organized in Wyoming, against Benjamin H. Eaton and Bruce G. Eaton, citizens of Colorado, and the Divide Ditch Company, a Colorado corporation. Three natural persons—George Rintoul, August Wurl, and Robert Ferguson—were made respondents, but were not served with process. August Wurl appeared, and answered the bill. The issue made by him is entirely apart from the issue made by the other respondents, and has not been the subject of controversy in the suit. No decree will be entered as to him.

The prayer of the bill is to restrain the diversion of water from Sand creek within the state of Colorado. The source of Sand creek is in the mountains of Colorado, whence its waters flow in a northerly direction into the Laramie river, in Wyoming. The length of the stream is about 15 miles in each of the states of Wyoming and Colorado, or 30 miles in all. Complainants charge that their grantors first settled upon Sand creek in the then territory of Wyoming, and began the use of water from Sand creek in irrigating their lands in the year 1867.

In times of high water the stream overflowed its banks, and considerable tracts of land adjacent to the stream were irrigated in this way so as to produce good crops of hay. The first settlers confined their operations to cutting hay from the overflowed lands and to the use of the higher lands for pasturage. Within the decade from 1870 to 1880 the waters of the stream were diverted by means of short ditches to other lands, and perhaps also to the overflowed lands, to be used in dry seasons. Afterwards longer ditches were made so as to cover considerable tracts of land much higher than the stream, but not very far from its channel. The channel of the stream is shallow. In some places the banks are higher than the adjacent land, so that it is easy to divert the water. In general, the lands irrigated are in a state of nature, and produce hay or pasturage only, but some small tracts have been plowed in which other crops are cultivated. In all about 5,000 or 6,000 acres are under cultivation by complainants in the valley of Sand creek in the state of Wyoming. In dry years there has not been sufficient water in Sand creek to irrigate all of complainants' lands, and usually the water has been exhausted, so that none reached the Laramie river. Some of the complainants use certain lakes near the lower course of the stream for impounding the water, and take out such water when the stream fails in the end of the summer.

The year 1902 was exceptionally dry, and the supply of water in Sand creek was not sufficient to irrigate complainants' lands and the lands of other persons residing in the valley of Sand creek in the manner and to the extent which had been practiced in the years preceding and since the settlement of the country. The Divide Ditch Company, under the control of the Eatons, who were stockholders and officers of that company, opened a ditch which had been previously constructed between Sand creek and Sheep creek, and by means thereof turned the greater part of the water from Sand creek into Sheep creek. One witness says that more than one-half the water flowing in Sand creek was taken, and, if there is a more definite statement of the quantity taken, the court has not discovered it. The water left in Sand creek after the diversion seems to have been used by irrigators residing in Colorado below the point of diversion, so that none went down to complainants, and they lost their crops from want of water to irrigate them.

This bill was filed November 8, 1902. It sets forth the character of Sand creek, its length and course, and the appropriation of its waters for the purpose of irrigating the lands adjacent to the stream by complainants and their grantors in the years between 1867 and 1890. Proof was made of these facts. Indeed, the settlement of the lands and the appropriation of the waters of Sand creek seems to be the only subject referred to in the testimony. Respondents have offered no proof concerning their title or right to take the waters of Sand creek. In their answer to the bill, and in that part of it which is called "a further answer, defense, and cross-complaint," they give some account of the Divide Ditch Company, and state that it is the owner of certain ditches described in a paper filed by one Philip Wilson in the office of the State Engineer of the state of Colorado on the 22d day of July, 1897. The affidavit is set out in the answer, and is followed by the statement that the ditches therein mentioned were constructed. As to the use

made of the water taken from Sand creek, the answer contains this averment:

"That the water so appropriated and diverted by the Divide Ditch Company from Sand creek and its tributaries as aforesaid, and the other ditches connected therewith, is thence run down into Sheep creek and from Sheep creek into the North Fork of the Cache la Poudre river; thence into and through the 'North Poudre Ditch,' so called, and into sundry large storage reservoirs connected therewith; that, after being so stored, the water is drawn off and to be drawn off for the benefit of the stockholders of the said the Divide Ditch Company and others having contractual rights therewith for water rights for the irrigation of lands in Larimer and Weld counties, state of Colorado."

Thus it appears that the waters of Sand creek, a tributary of Laramie river in the state of Wyoming, are taken by defendants into the North Poudre river, a tributary of the South Platte river in the state of Colorado, for irrigating lands in the counties of Larimer and Weld in the state of Colorado. From the point of diversion on Sand creek complainants' lands are nearly north a distance of perhaps 20 miles. From the point of diversion on Sand creek the water taken by respondents is used on lands in the counties of Weld and Larimer in an easterly direction a distance of about 60 miles. The remarkable feature of this condition is that water is taken from a tributary of the Laramie river, and put into another stream entirely different in its course and character, to serve lands which are not in the basin of Laramie river or of Sand creek, or in any manner subservient to Sand creek or the Laramie river. This purpose was plainly declared in Wilson's affidavit, before referred to, in these words:

"It being also the intention hereby to divert the water herein appropriated from the watershed of the Big Laramie river into the watershed of the Cache la Poudre river, as shown on accompanying plat."

This part of the answer was regarded by respondents as a cross-bill, and the complainants in the original bill, or some of them, answered it. A cross-bill in an answer is not known in the practice of federal courts. If respondents had urged its consideration as a cross-bill, we should have had some difficulty in going on with the case at this time; but they seem to have abandoned it. As the respondents have called it an answer as well as a cross-bill, I suppose we may regard their statement of title in that part of the answer, in so far as it shows the nature and purpose of the diversion of the waters of Sand creek, as entirely correct.

The fourth paragraph of the bill of complaint is as follows:

"The plaintiffs severally claim their rights, hereinafter set forth, as lands under grants of the state of Wyoming, and said defendants severally claim their rights hereinafter mentioned as lands under grants of the state of Colorado."

And the fourteenth paragraph reads as follows:

"The plaintiffs are informed and verily believe that the defendants claim and pretend, by reason of the interstate character of said stream, and by reason of the diversity of citizenship and the location of lands of the plaintiffs and those of the defendants in different states, that the defendants have the right to wholly exclude the plaintiffs from the use of the waters of said creek, and to take and apply and appropriate, in Colorado, all of the waters of said creek, in disregard and exclusion of the vested and acquired prior

rights of the plaintiffs aforesaid; and the defendants deny and dispute all rights of the plaintiffs to make any appropriation or use of the waters of said creek without the limits of Colorado, and claim all of the said waters as lands granted by the Constitution and laws of Colorado exclusively to the citizens and occupants of lands in said state."

The latter paragraph was not answered by respondents, but it was affirmed by Bruce G. Eaton in his testimony before the master.

The fourth paragraph is palpably false, and it is difficult to understand the reason for making the statement. Counsel has not offered any explanation, except that it was intended to support the jurisdiction of the court. Possibly it was intended to support the idea asserted in the fourteenth paragraph that the waters of the state belong to its people for any use that may be made of them within the state. We had occasion recently to consider whether the right of a citizen to use water within the state for irrigation of lands is granted by the state or general government, and we were unable to discover any principle of that kind. Mohl v. Lamar Canal Co. (C. C.) 128 Fed. 776. The idea of an exclusive right in the people of a state to divert its running waters to the injury of riparian owners in another state must be equally untenable. Indeed, the doctrine of riparian ownership and use of running water is not subject to political boundaries. Between hostile states the doctrine may not be recognized, but any such repudiation would be simple vis major. Between states dwelling in peace and concord, as are the states of our Union, the equal right of the inhabitants of each state to the waters of intersecting streams must always be recognized. Water is essential to human life in the same degree as light and air, and no bounds can be set to its use for supplying the natural wants of men other than the mighty barriers which the Creator has made on the face of the earth.

There is sound reason and some authority for saying that in the arid country water for irrigating land is a natural want of men, to be ranked with what is commonly called "domestic use." An early case in the state of Illinois was between owners of mills located on a small brook, each of which consumed the entire flow of the brook. The court, with excellent fullness and intelligence, discussed the principles which control the use of running waters for supplying the wants of men and for commercial purposes. In the course of its opinion the court says:

"In countries differently situated from ours with a hot and arid climate water doubtless is absolutely indispensable to the cultivation of the soil, and in them water for irrigation would be a natural want." Evans v. Merriweather, 3. Scam. 495, 38 Am. Dec. 106.

This doctrine, so reasonable and just as to commend itself to all acceptance, was early recognized in the territory of Colorado as inherent in the conditions of the climate and aridity of the soil. Yunker v. Nichols, 1 Colo. 551. In the Circuit Court of Montana the principle was put upon the act of Congress of 1866. Howell v. Johnson et al. (C. C.) 89 Fed. 556. And the Supreme Court has said that the act of 1866 was the recognition of a pre-existing right, rather than the establishment of a new one. Broder v. Water Company, 101 U. S. 274, 25 L. Ed. 790.

We need not pursue the subject very far. The parties to this suit are not in controversy, except upon the point that complainants have not made a valid appropriation of the waters of Sand creek under the laws of Wyoming. Respondents maintain that complainants have no standing in court, because they have not shown compliance with certain acts of assembly in Wyoming regulating the appropriation of water in that state. The acts have been called police regulations, and they are intended to regulate the distribution of water among the inhabitants of a stream so as to insure to each his rightful proportion according to the extent of his appropriation. Obviously, these acts have no application or controlling force in this controversy. As before stated, they control the conduct of parties inhabiting the same stream. Respondents are not subject to them. They have diverted the water of Sand creek, and carried it to another district in another state. The parties to the suit are foreign in purpose as they are in residence. They have no relations for sharing the waters of Sand creek between them. Each denies to the other any use whatever of the waters of Sand creek. Therefore laws regulating the use of water amongst inhabitants of the same stream are not pertinent to the controversy. It is enough that complainants and their grantors were in the possession and enjoyment of the water a long time prior to respondents' diversion, and therefore the first appropriators under the law of the land as understood in Wyoming and Colorado.

Some question was made whether complainants' appropriations, and those of others residing in the basin of Sand creek, were of all the waters flowing in that stream. I regard the evidence on that subject as sufficient to establish the fact against respondents, who claim a right to divert all the waters of the stream as against complainants' use of the same waters.

An injunction will be allowed according to the prayer of the bill.