[No. 1322.   March 4.]

J. TURLEY, ET AL, Plaintiff in Error, v. L. B. FUR-
MAN, ET AL, Defendant in Error.

SYLLABUS (BY THE COURT).

A project to irrigate lands in New Mexico from the waters
of a natural stream running from Colorado into New Mexico,
when the point of diversion, the head gate, and about six
miles of the irrigation ditch are in Colorado, is not within
the jurisdiction of the territorial engineer of New Mexico,
and he is without authority to issue a permit for such a
project.

Writ of Error to the District Court for San Juan
County, before JOHN R. McFIE, Associate Justice.   Af-
firmed.

HANNA & WILSON for Plaintiffs in Error.

Jurisdiction of territorial engineer. Laws 1907, chap. 49, secs. 4, 24, 27; Mills' Irrigation Manual, sec. 39.

Appropriation. Fort Morgan L. & C. v. South Platte D. Co., 18 Colo. 1; Farmers Ind. Co. v. Agricultural D. Co., 45 Pac. 444; Cast v. Thornton, 3 Colo. App. 475; Offield v. Thornton, 3 Colo. App. 475; Offield v. Ish, 57 Pac. 809; Wiel on Water Rights, 1 ed., 161; Wheeler v. Northern Colo. Irr. Co., 11 Colo. 582; Laws 1907, chap. 49, sec. 2; Farmers High Line Canal and Reservoir Co. v. Southworth, 13 Colo. 111; White v. Farmers High Line Canal and Reservoir Co., 43 Pac. 1028.

Limitation of police power. Grossman v. Cominez, 79 N. Y. Sup. 900; Lawton v. Steele, 152 U. S. 133; Colon v. Lisk, 60 Am. St. Rep. 609.

Appropriation of water from inter-state streams, at point in another state than the one in which lands to be irrigated are located. Willey v. Decker, 11 Wyo. 496; Perkins County v. Graff, 114 Fed. 441; Mills Irrigation Manual, secs. 42, 45. Constitution Colorado, Art. XVI, sec. 386; Lampson et al v. Vailes, 27 Colo. 201; Rickey Land & Cattle Co. v. Miller & Lux, 152 Fed. 11; Howell v. Johnson, 89 Fed. 556; Morris v. Bean, 123 Fed. 618; Anderson v. Bassman, 140 Fed. 14; Morris v. Bean, 146 Fed. 423; Bean v. Morris, 159 Fed. 651; Taylor v. Huiett, 97 Pac. 37, Idaho; Rickey v. Land & Cattle Co., v. Miller & Lux, 81 C. C. A. 207.

A water right is real property appurtenant to the lands to be irrigated thereby. Hull v. Blackman, 8 Idaho 272; Coventon v. Senfert, 23 Ore. 548; Frank v. Hicks, 4 Wyo. 502; Conant v. Deep Creek & C. Valley Irrigation Co., 23 Utah 627; Rickey Land & Cattle Co. v. Miller & Lux, 152 Fed. 11; Carpenter v. Strange, 141 U. S. 87.

E. C. ABBOTT, H. C. ALLEN, and J. M. PALMER for Defendants in Error.

Rights acquired by diversion and use of water governed and limited by statute. Laws 1907, sec. 1, page 73.

Water flowing in ditches, canals, or other artificial conduits cannot be appropriated. Mills Irrigation Manual, secs. 26-38; Cardelli v. Comstock Tunnel Co., 26 Nev. 284.

The place of appropriation is the point of diversion. Wheeler v. Northern Colo. Irr. Co., 10 Colo. 582; Farmers High Line Canal C. & R. Co. v. Southworth, 13 Colo. 111; Albuquerque L. & I. Co. v. Gutierrez, 10 N. M. 177; Slosser v. Salt River Valley C. Co., 1 Ariz. 376; Gould v. Maricopa C. Co., 76 Pac. 598, Ariz.; Salt River Val. C. Co. v. Nelssen, 85 Pac. 117, Ariz.; Mills Irrigation Manual, secs. 42, 118.

Running water so long as it continues to flow in its natural course, cannot be subject to private ownership. Dalton v. Bowker, 8 Nev. 190; Wheeler v. Northern Colo. Irr. Co., 10 Colo. 582.

Water which the appropriator has taken from its natural channel and confined in his diverting works may be personal property. Bear Lake and River W. W. & I. Co. v. Ogden City, 38 Pac. 135; Wheeler v. Northern Colo. Irr. Co., 10 Colo. 582.

Statute under which territorial engineer acts. Laws 1907, p. 73, secs. 1, 2, 4, 24, 34, 42, 43, 46, 47, 48; Mills Irrigation Manual, secs. 63-67.

Jurisdiction of board of water commissioners limited to the appropriation of water in the Territory of New Mexico. Laws 1907, chap. 49, sec. 63; Lamson v. Vailes, 27 Colo. 201; Gen. Stat. 1883, Colo., secs. 1711, 1741, 1762, 1766, et seq.; Colo. Session Laws 1885, p. 259, sec. 26.

ABBOTT, J.—The essential question for determination here in this cause is whether the territorial engineer of New Mexico has jurisdiction under Chapter 49 of the Session Laws of 1907 to grant a license for the appropriation of water for the irrigation of lands in New Mexico from a stream, the Animas river, which flows from Colorado into New Mexico, the proposed point of diversion being in Colorado, about six miles from the line between Colorado and New Mexico, and the project including a

ditch from the diversion point across the state line, with a head gate at the point of diversion.

In the first section of the statute in question it is declared that "all natural waters flowing in streams and water courses, whether such be perennial or torrential, within the limits of the Territory of New Mexico belong to the public and are subject to appropriation for beneficial use." The fourth section provides for a territorial engineer "who shall have general supervision of the waters of the territory and of the measurement, appropriation and distribution thereof." Obviously the waters of the territory here referred to are the same as those specified in the first section. Whether the power of the legislative assembly of New Mexico over those waters is as broad as by the act in question it was assumed to be is a question which has not been raised in this case, and need not now be considered. That the authority and jurisdiction of the territorial engineer are derived wholly from the statute, we understand is not questioned. The waters over which he has jurisdiction are specifically named in the portions of the statute above quoted, and we have only to determine the meaning of the words "natural waters flowing in streams and water courses * * * within the limits of the Territory of New Mexico." Unquestionably the waters of the Animas river when they enter New Mexico in their natural channel fall within the meaning of the statute. If those waters or any portion thereof are diverted in Colorado and come into New Mexico through an artificial ditch by means of which they are put to beneficial use on lands in New Mexico, are they such "natural waters" as the statute contemplates when they reach New Mexico? It is well settled that they lose that character at the point of diversion as soon, at least, as they are applied to beneficial use. Wiel on Waters, etc., sec. 153, et seq. But this is perhaps no more than a moot question at this time. No part of the waters of the Animas river has come into New Mexico except by the natural channel. The proposed ditch for bringing it in exists only on paper and may never have any more substantial being, and, if the territorial engineer has jurisdiction in any way extending into Colorado, it must grow

out of the nature of the rights which may exist in a natural stream.

We understand the contention of the plaintiffs in error to be that the right of one who has appropriated water, say from the Animas river, by putting it to beneficial use in New Mexico, which is undoubtedly independent of state lines and would be protected by the courts, although the point of diversion should be in Colorado, against subsequent attempts to appropriate it, is a part of the waters of New Mexico to which the statute applies But such rights are strictly private. They existed before the statute, and its repeal would not affect them. They run across the state line, but the permit by the territorial engineer of New Mexico cannot cross that line with them to impair or protect. It would not be claimed that any authority in Colorado would be bound to recognize in any way or give any effect whatever to any rights the New Mexico official might assume to give there. It may be said that the same would be true if the point of diversion were in New Mexico. But in the latter case the territorial engineer does not attempt to give or protect any rights in Colorado. He issues a permit to divert and use in New Mexico natural waters which have come into New Mexico in their natural channels.

By Section 63 of the act in question it is provided that there may be an appeal from any "decision, act or refusal to act" of the territorial engineer at any time within 30 days after notice of that from which an appeal is desired, but, unless such appeal is taken, "the action of the territorial engineer shall be final and conclusive." Assuming the statute to be valid, the courts of New Mexico would be bound to recognize such action, not duly appealed from, and those in whose favor it was taken would be assured of protection here which would be wholly lacking in Colorado as regards any action of the territorial engineer. That the legislative assembly of New Mexico did not mean to attempt to give the territorial engineer any authority extending beyond the boundaries of New Mexico we think is made clear by some of the provisions of the statute. In Section 32 it is provided that his fees and other charges

may be made a lien on works for the diversion, storage, or carriage of waters which are found to be unsafe. Our assembly could not have supposed it had power to subject property outside of New Mexico to liens. By the next section the territorial engineer and the district attorney of the county in which such unsafe works are located are required to prosecute owners who shall be guilty of "misdemeanor" of failing to make their works safe on notice. By Section 46 every ditch owner is required to maintain a "substantial head gate" at the point of diversion on request of the territorial engineer, and a "measuring device" satisfactory to him, and failure for 20 days to complete such device by the owner is a misdemeanor, and the territorial engineer may refuse to deliver water to him. Obviously he would be helpless in Colorado to carry out the design of the statute. By Section 47 one who interferes with, injures, or destroys any dam, head gate, etc., is guilty of a misdemeanor, and is also liable in damages. By Section 50 it is made a misdemeanor to obstruct authorized works for the appropriation of water. Suppose there should be such interference or obstruction outside of New Mexico, where is the remedy? These and other provisions indicate clearly that the legislature could not have had in mind any thought of extending the authority of the officers charged with the execution of the law beyond the borders of New Mexico, and, even if that had been their intention, we cannot see how it could be made effectual.

There can be no doubt that, if the waters of the Animas river should be needed in Colorado for power, light, mining, or other purposes, they could and probably would be appropriated accordingly, and that neither the territorial engineer, the water commissioners, nor the courts of New Mexico, nor all together, could prevent it. How would there be any redress anywhere if such appropriation in Colorado should be made, as it well might be, prior to any beneficial use in New Mexico? This case is one of practically new impression, and no decisions of other courts have been brought to our attention by counsel on either side which throw much light on the question of the juris-

diction of the territorial engineer in such a case. A Wyoming decision—Willey v. Decker, 11 Wyo. 496—is the only one dealing with the subject which has come to our notice. That goes to sustain the conclusion at which we have arrived, that the territorial engineer was without authority to approve the application in question, and issue a permit based on it. Since we find that he had not such authority, it becomes unnecessary to determine whether the project is feasible.

The judgment of the district court is affirmed.

Parker, Wright, and Mechem, J. J., dissent.

—

McFie, J., having rendered his opinion at the close of the argument, orally files herewith the reasons for his decision in the above case pursuant to Section 884, Compiled Laws of 1897.

This case grows out of a protest filed by L. B. Furman et al., who had made application for a permit for the appropriation of water for the irrigation of large portion of the same lands proposed to be irrigated by the Turley ditch, the Furman appropriation to be made through a head gate upon the Animas river near the north line of the Territory of New Mexico, which head gate and the entire line of the ditch were to be located within the territory, and the appropriation to be made of public waters of New Mexico after the same had entered said territory in the bed of the stream. The territorial engineer granted Jay Turley et al. a permit to appropriate water for the irrigation of the same lands covered by the proposed Furman appropriation and some additional lands, all in the Territory of New Mexico, through a ditch whose head gate was upon the Animas river in the State of Colorado, and six miles of the proposed Turley ditch was also in the State of Colorado and beyond the operation of the laws of New Mexico establishing the office of territorial engineer and defining his powers. The controversy was submitted to the district court of San Juan county at the November term, A. D. 1909, upon a stipulation as to the

facts, and was argued orally by counsel, and was decided orally by the court.

The two questions submitted for the court's decision were:

(1). The jurisdiction of the territorial engineer of New Mexico to grant a permit for an appropriation of water in the State of Colorado, which water had never entered within the territory in any of its streams, so as to become the public waters of the territory.

(2). The feasibility of such appropriation and project.

Upon the first question, that of jurisdiction, a pertinent inquiry is: For what purpose is the engineer given power to grant the permits or licenses provided for in the act creating his office and defining his powers and duties? Chapter 49, Laws of 1907. The answer is, that it is for the purpose of appropriation of waters. Section 24 says in part: "Any person, association or corporation, public or private, hereafter intending to acquire the right to the beneficial use of any waters, shall, before commencing any construction for such purpose, make an application to the territorial engineer for a permit to appropriate, in the form required by the rules and regulations established by him." Section 27 provides that: "When the engineer approves an application, the same becomes a permit to appropriate water." Appropriation of water is held to be "the intent to take, accompanied by some open, physical demonstration of the intent, and for some valuable purpose." Larimer Co. Res. Co. v. People, 8 Colo. 616. Thus diversion and application to a beneficial use are both factors of an appropriation, and these are more or less interdependent. The point of diversion is so important that Section 25 prohibits a change of the point of diversion, except with the approval of the territorial engineer. What power can the engineer of New Mexico have over a change in the point of diversion in the State of Colorado may well be considered here, especially as this section absolutely prohibits a change of the point of diversion in case prior rights are thereby affected, thus indicating the intent of the legislature to limit the opera-

tion of Chapter 49, supra, to the diversion of public waters within the territory as defined in the first section of the act of 1907. It must be, and indeed is, conceded in the negative opinion that the engineer cannot act officially beyond the limits of the territory, and yet, chapter 49, supra, teems with powers and duties which require official action by the engineer, and under rules and regulations to be made and executed by him, the enforcement of which cannot possibly operate outside the territorial boundaries. Many of these are police regulations, involving life, health, and property as provided in Section 32. Section 47 provides, among other things, that interference with the dam, head gate, wire, bench mark, or other appliances for the diversion, carriage, storage, apportionment, or measurement of water or interference with any person, etc., shall be a misdemeanor and warrant arrest; and it further provides that the territorial engineer or any of his assistants shall have power to arrest such offenders, and "deliver him to the nearest peace officer in the county." It would be idle to contend that such provisions could have any extraterritorial effect, so that it is abundantly apparent that in the enactment of chapter 49, supra, the Legislature intended to limit its operations to New Mexico alone, with no intention of making its provisions applicable to interstate irrigating ditches, whose head gates and points of diversion would necessarily be in a foreign jurisdiction and subject to the operation of foreign laws. To illustrate this, suppose persons were engaged in the destruction of the head gate of the Turley ditch at the point of diversion in the State of Colorado; could the territorial engineer or his assistants enter the State of Colorado and arrest the guilty parties, and "take them before the nearest peace officer in the county?" These considerations throw light upon the provisions of the first section of the act, wherein it is declared that the public waters over the appropriation of which alone the territorial engineer has jurisdiction are natural waters within the limits of the territory, and which have entered its limits following streams and water courses. In Vanderwork v. Hewes, 15 N. M. 439, this court said: "Sec-

tion 12, c. 49, Laws of 1907, provides as follows: 'The territorial engineer shall have the supervision of the apportionment of the water in this territory, according to the licenses issued by him and his predecessors and the adjudications of the courts.' This section, however, cannot be held to relate to waters held in private ownership or by prior appropriation, but must be held to relate to public and unappropriated waters within the territory. Section 1 of the act of 1907 makes this clear, as it provides that: 'All natural waters flowing in streams and water courses, whether such be perennial or torrential, within the limits of the territory of New Mexico, belong to the public, and are subject to appropriation for beneficial use.' This section expressly limits the operation of the Act of 1907 to natural public waters within the territory of New Mexico, with the further limitation that it is water flowing in streams and water courses."

The courts of Colorado have reached a similar conclusion. In the case of Lamson v. Vailes, 27 Colo. 201-204, the court said: "The statutes under which this proceeding was instituted, those creating the various water districts, and our entire irrigation law, must be taken together, and, if possible, the different provisions so interpreted as to give effect to all and make them harmonious the one with the other. It is not to be supposed that the state was legislating for the reclamation or irrigation of lands beyond its boundaries, or making provision by the way of police regulations (which we have held these statutes in some measure to be) over a territory beyond its jurisdiction. The different acts establishing water districts (1 Mills' Ann. Stat. sec. 2310 et seq.; Gen. Stat. 1883, sec. 1741 et seq.) either in terms declare or by implication assume that these districts are restricted to lands within the state; and the particular act creating district No. 33, the one in question, is: "That district No. thirty-three shall consist of all lands laying in the state of Colorado irrigated from ditches or canals taking water from the La Plata river, and its tributaries, which lie in Colorado." (1 Mills' Ann. Stat. sec. 2344; Session Laws 1885, p. 259, sec. 26). The earliest territorial acts expressly confine legisla-

tion relating to irrigation to lands situate in the territory. 1 Mills' Ann. Stat. sec. 2256, et seq.; Gen. Stat. 1883, sec. 1711. From these enactments it is altogether conclusive that in these proceedings, at least, the intention of the General Assembly was to limit the adjudication to ditches irrigating lands situate in this state, and not elsewhere. "Such being our conclusion, it is unnecessary, as we have said, to pass upon the other legal proposition pressed upon us. No complaint having been made of the quantity of water awarded for the irrigation of appellant's lands situate in Colorado, and the additional quantity to which they claim they are entitled being based upon their attempted diversion and appropriation for the benefit of lands in New Mexico, it becomes necessary to determine the assignment of error based upon an alleged erroneous award."

In an opinion of Hon. Frank W. Clancy, Attorney General of New Mexico, as to the limitations upon the territorial engineeer under Chapter 49, creating the office, and sustaining the engineer in his refusal to grant a permit for water of the Gila river to be diverted in New Mexico for the irrigation of lands in Arizona, the Attorney General said: "The first thing to strike the mind is that the territorial engineer cannot possibly have any jurisdiction over anything beyond the limits of the territory, nor is there anything in our legislation to indicate any purpose to provide for the needs of our neighbors beyond these limits." And he further says: "It cannot be possible that we ought to permit Arizona to come into New Mexico and take away out of our territory New Mexican waters for use elsewhere, when there are New Mexican lands upon which we can use it, and our local statute certainly does not contemplate any such suicidal proceedings. That statute alone is the source of all the authority and power of the territorial engineer and the board of water commissioners." If this is good law, and it seems to be such, the state of Colorado has certainly the same rights, and it is for the state of Colorado and not the territorial engineer of New Mexico, to determine whether or not there are lands in that state upon which the waters sought to

be diverted by the Turley project can be used beneficially, and the dictum of the engineer cannot deprive Colorado of this right.

The negative opinion presents this case as if it were untrammeled by our statute, and as if its diversion and appropriation of water in Colorado was made under the general law of prior appropriation. If such were the case, a different case would be before the court, but, when the diversion is made in Colorado under a permit authorized by a statute local to New Mexico, it is subject to all the limitations of that statute, and does not proceed under general law of prior appropriation. The difference in the result of the procedure is that, by obtaining permit under the territorial statute, Turley et al. is enabled to defeat the protestants from obtaining a permit to construct a ditch to irrigate much of the same lands, notwithstanding protestants' irrigation system, including the point of diversion and of beneficial use, was wholly within New Mexico and completely within the jurisdiction of the territorial engineer. This would not be the result of a diversion of water in Colorado under the law of prior appropriation, without regard to the territorial statute. If the point of diversion of the waters of a stream is in New Mexico, such waters are the public waters of New Mexico under the statute, and it is not doubted that rights thus secured may be protected by law, notwithstanding they may be diverted from an interstate stream, for, when such waters pass within our boundaries, it is an established fact that they are New Mexico water, and when appropriated that appropriation cannot be disturbed, but such local diversion is the basis of an adjudication of water rights for territorial lands in the courts of a foreign jurisdiction. When states organize irrigation systems by state laws, they are careful to limit their operation to their own boundaries. The state of Colorado has thus organized, and New Mexico is proceeding to organize also, as Chapter 49, Laws of 1907, indicates. The Animas and La Plata rivers flow from Colorado into New Mexico, and irrigation district No. 30 embraces the Animas river (involved in this case) to the New Mexico line, while dist-

rict No. 33 embraces the La Plata river. These districts are defined by the Colorado statutes in the following language:

District No. thirty.—Sec. 219. That district No. 30 shall consist of all lands lying in the State of Colorado irrigated from ditches or canals, taking water from that part of the Rio Las Animas river, and its tributaries, which lie in Colorado. Laws 1885, p. 259, sec. 23.

"District No. thirty-three.—Sec. 222. That district No. 33 shall consist of all lands lying in the State of Colorado irrigated from ditches, or canals, taking water from the La Plata river, and its tributaries, which lie in Colorado." Laws 1885, p. 259, sec. 26.

As the proposed Turley ditch locates its head gate on the Animas river six miles north of the Colorado and New Mexico line, this portion of his proposed ditch and its head gate is wholly embraced within the limits and jurisdiction of district No. 30 of that state, and subject to its rules and regulations.

Feasibility.—The feasibility of the Turley project is the second proposition for consideration. When it is understood that under this permit the period of construction may extend to five years, and not exceeding four years more for the application of the water to a beneficial use from date of permit, the question of feasibility is one of prime importance, one of which there should be absolutely no doubt. Many of the matters above set forth point directly to the non-feasibility of the Turley project; for it must be admitted that, so far as the New Mexico laws and permits are concerned, this ditch is headless and waterless, and beyond the power of New Mexico or its territorial engineer to make it otherwise. Under the Constitution and laws of Colorado, all water rights and priorities are to be adjudicated by the courts of that state, and fixed by a final decree thereof, and no such adjudication has been had settling the rights or priorities of the proposed Turley ditch in that state, and the application before the state engineer gives no assurance as to the action of the Colorado courts when an attempt is made by Mr. Turley to divert water in that

state for the irrigation of lands lying wholly in New Mexico. Certain it is, that if the Attorney General of Colorado coincides with the views expressed by the Attorney General of New Mexico, Mr. Clancy, the Turley irrigation project will be both waterless and valueless, a purely speculative proposition, obnoxious to irrigation laws. In line with this (Section 3186, Rev. St. 1908) the Colorado statute provides: "A certified copy of the map and statement thus filed in the state engineer's office shall be prima facie evidence in any court having jurisdiction, of the intent of the claimant or claimants to make such construction and to utilize such rights as are shown and described in the map and statement; provided, that nothing herein contained shall be so construed as to dispense with the necessity for due diligence in the construction of such projects, or to the injury of those having rights prior to those of the claimants; and provided, further, that nothing herein contained shall be construed as to prevent a proper adjudication of rights in accordance with existing statutes governing such adjudication." From this provision of the Colorado statute, as late as 1908, it will be seen that all the claimant acquires by the filing of his map and statement is prima facie evidence of his intentions. The validity of his rights, the question as to whether or not he has been diligent, all these and others, remain to be ascertained at some future date by the courts of Colorado in a proper proceeding. In a proceeding between ditches in different states the doctrine of relation would not apply, but the relative rights of the parties would date from the time when an actual appropriation was made by an application of the water to beneficial use. The Constitution of Colorado declares that all unappropriated water flowing in the natural streams of the state is for the use of its people.

"Appropriation.—Right of diversion and use guaranteed under Par. 5, Art. XVI of the Constitution." "Our Constitution dedicates all unappropriated water in the natural streams of the state 'to the use of the people,' the ownership thereof being vested in 'the public.' The same instrument guarantees in the strongest terms the right of

diversion and appropriation for beneficial uses." Wheeler v. Northern Colo. L. Co., 10 Colo. 587.

The head gate and several miles of the Turley ditch, the source of its water supply, being in the state of Colorado, it is possible that it will be declared a Colorado enterprise independent of the operation of the statute of New Mexico. "The water right is entirely distinct from the right to the ditch in which the water is conveyed. The latter is an easement. The former is an incorporeal hereditament, sui generis, and not an easement. The water right and ditch right may be conveyed separately or the one may exist without the other." Wiel on Water Rights, p. 126, sec. 64; Nevada, etc., Co. v. Kidd, 37 Cal. 282, 309; Zimmler v. San Luis, etc., 57 Cal. 221; McLear v. Hapgood, 85 Cal. 555; Mayberry v. Alhambra, etc., 125 Cal. 444. "A ditch is an artificial water course. It is an easement." Wiel on Water Rights, p. 230, secs. 150, 151, and cases; Schneider v. Schneider, 36 Colo. 518; Gibson v. Cann, 28 Colo. 499; D. P. & I. Co. v. D. & R. G. R. R. Co., 30 Colo. 204. A water right is further distinguished from the owners of the ditch or channel in Wiel on Water Rights, p. 232, sec. 152.

"Water in Artificial Water Course.—Water and Water Rights Distinguished.—The water in a reservoir or ditch or other artificial water course or appliance is private property as a commodity. A fundamental conception in the law of waters is here involved. We have given the fundamental theories a separate consideration elsewhere; but, for the consistence in the arrangement of material, we repeat somewhat here."

"The corpus of water in a natural stream is not itself property in any sense, but is without an owner. The corpus of water out of the stream and under private control ceases to be without an owner. It is in this that the distinction lies at the very basis of all legal conceptions of rights in water courses. The water out of the stream ceases to be without ownership, but is 'water without somewhat of a proprietary right.' * * * * *"

"The foundation of these rules, being the civil law proposition that the particles or aggregate drops of run-

ning water, so long as they flow in their natural course, are not property nor the subject of ownership, but are in a class with the air and those things which cannot be owned; we now follow the particles of the liquid from the stream into a ditch into which they have been diverted. Following the particles of the liquid from the stream into the ditch, there then has come a change in the 'wandering' (as Blackstone says) of the liquid that has been taken into the ditch. It is like the change regarding wild birds caught in a snare, wild animals caged, fish caught in nets. Before capture, none of these were regarded as property, real or personal, being wandering, ownerless things. While wandering at large they are nobody's property, but, after capture they become the private property of the taker. So with any specific particle of water that has passed into private control in a reservoir, ditch, or other artificial appliance. The particle has been taken from its natural haunts, so to speak, and passed into private possession and control and become private property. * * * *"

"154. Water in Artificial Water Courses is Personalty. —The individual particles of water so impressed by diversion into a ditch as to become private property possess none of the characteristics of immovability that go with ideas or real estate. They are still always moving though privately possessed, having, as particles, the characteristics of personal property. * * * *"

From the foregoing text and the authorities in support thereof, it must be conceded that the individual or corporation may construct a channel upon a right of way or land owned by him or it, without a permit from the engineer, so long as there is no intention to appropriate the waters of the territory, and, if water is procured from some other source, such water when it is in the ditch is private property, subject to the absolute control of the owner of the ditch or user of the water, and entirely removed from the jurisdiction or control of the territorial engineer or any of his subordinates. It has been argued that, should the Turley ditch be constructed, notwithstanding the fact that its head gate is in Colorado, the water flowing in the ditch as soon as it crossed the New Mexico

line would be subject to the jurisdiction of the territorial engineer. Such could not possibly be the case, for the corpus of this water has passed into private ownership and control before it ever came within the jurisdiction of the territorial engineer, and nothing can be found in the state giving him any jurisdiction over any other than the waters of the territory. True, an appropriation made in New Mexico is of such a character that the quantity of water so appropriated may be protected from interference by subsequent appropriations, clear to the headwaters of the stream, but this reasoning could not justify the claim that because these waters might, if undisturbed and permitted to flow in the natural channel become the waters of New Mexico, be taken by an appropriation under the New Mexico laws beyond the borders of the territory, and before they have ever become New Mexican waters.

Therefore, the following propositions are deducible:

(1). That there is no law authorizing the issuance of a permit by the territorial engineer for the proposed Turley ditch.

(2). That an attempt to issue such is beyond the jurisdiction of the engineer, and void.

(3). That, being void, he has encumbered his records with a permit of no value and over which he has no jurisdiction to the detriment of persons seeking to appropriate the waters of the territory, and are sound and within the proper construction of the irrigation code.

To one who has made a thorough study of irrigation laws, it needs no argument to demonstrate the fact that the public water official has no jurisdiction over the water, or its distribution, after it has passed from the natural channel into the private or artificial channel of the appropriator. It then becomes private personal property. The statute itself does not attempt to give the territorial officials any power except over the public waters and the appropriation thereof. After appropriation and the diversion of water from the stream this power ceases. In Cache La Poudre I. Co. v. Hawley, 43 Colo. 32, 37, the court says: "A water commissioner is not required, nor is it his duty, to make any diversion or distribution of water

between the users thereof from the same ditch. Neither has he any authority to interfere with the internal management of the affairs of a ditch company." Therefore, the Turley ditch, having its head gate in Colorado, making its appropriation under the laws of that state, reducing the waters of the natural stream, while they are the property of the state of Colorado, to possession and private ownership, removes all things over which the territorial engineer or his subordinates could possibly have any jurisdiction. In addition to the foregoing potent reasons why the engineer should not be permitted to incumber his records with this permit, and thus be in a position to refuse to grant a permit to a project entirely within the control of the territorial officials, is the fact that the Colorado courts refuse absolutely to give an appropriation such as the Turley ditch would have any standing whatsoever in the courts of that state. The interstate argument of the negative opinion, while no doubt sound in a proper case, I do not regard as applicable to the present case, as it is wholly outside the scope, purpose, and intent of our statute creating the office of territorial engineer, defining the waters over the appropriation of which he has jurisdiction and fixing his powers and duties. When in Section 1 of Chapter 49, supra, the Legislature said: "Section 1. All natural waters flowing in streams and water courses, whether such be perennial or torrential, within the limits of the Territory of New Mexico, belong to the public and are subject to appropriation for beneficial use"—it is obvious that the Legislature meant just what it said, and used the words "within the limits" advisedly, as relating solely to water in the streams and water courses within the boundaries of the territory, and not while such waters were subject to the Constitution and laws of the State of Colorado. To accomplish the latter result is a legislative, and not judicial, power. All this court has to do is declare the law as it now is. Section 12 of the Act, which seems to be relied upon to broaden the scope of the Act in the majority opinion does not do so, but, on the contrary, is controlled by Section 1, as this court declared in the case of Vanderwork v. Hewes, supra.

In view of these facts, I am forced to the conclusion, first, that the territorial engineer has exceeded his jurisdiction; second, that the Turley project in the light of all the weaknesses shown to exist is most unfeasible, and that it would be contrary to the best interests of the public, and would retard, instead of accelerate, the development and settlement of the country sought to be reclaimed.