**LINDSEY v. McCLURE, State Engineer of New Mexico.**

No. 2300.

Circuit Court of Appeals, Tenth Circuit.

May 24, 1943.

Langdon H. Larwill and Malcolm Lindsey, both of Denver, Colo., for appellant.

A. T. Hannett and M. C. Mechem, both of Albuquerque, N. M., for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Lindsey, as receiver of the San Luis Power and Water Company,[1] a Colorado corporation, brought this action to enjoin McClure from enforcing an order issued by him as State Engineer of the state of New Mexico, prohibiting the Water Company from using certain irrigation works, situate in New Mexico, for diverting, storing, and carrying waters of the Costilla river for use on land situated in Colorado. The trial court sustained a motion to dismiss the complaint, as amended, and entered judgment dismissing the suit.

The facts as alleged in the complaint, as amended, which must be taken as true in the present posture of the action, are these: The Costilla river is an interstate stream. It heads in Colorado, flows in Colorado and New Mexico, crossing the Colorado-New Mexico boundary line three times, and empties into the Rio Grande river in New Mexico. In 1853, a ditch was constructed to carry water from the Costilla river directly to lands in New Mexico and lands in Colorado. The construction of that ditch was shortly followed by the construction of other direct ditches and in the course of a very few years all the available water of the Costilla river, except during times of the spring run-off and floods, had been appropriated for irrigation through the direct ditches. Three reservoirs were also constructed for storing water from the Costilla river for irrigation purposes. These reservoirs are owned by the Water Company. They are Eastdale Reservoir No. 1 and Eastdale Reservoir No. 2, both situated in Costilla County, Colorado, and the Costilla Reservoir situated in Taos County, New Mexico.

On December 2, 1911, a decree was entered in a New Mexico district court which adjudicated the priorities and fixed the priority dates of the water rights under the New Mexico direct ditches. On June 14, 1889, December 14, 1905, and February 11, 1935, respectively, decrees were entered in a Colorado district court which adjudicated the priorities and fixed the priority dates of the Colorado direct ditches and the Colorado reservoirs. By the decree of December 14, 1905, Eastdale Reservoirs, Nos. 1 and 2, were adjudicated to have a priority date of April 21, 1890, by original construction. By the decree of February 11, 1935, they were given additional priority dates of August 6, 1908, and August 22, 1908, respectively, by enlargement. Their priorities by original construction and enlargement were for an aggregate of 6,509 acre feet of water.

After the completion of the enlargement of the Eastdale Reservoirs, the Water Company on August 29, 1911, filed with the then State Engineer of New Mexico, an application for Permit No. 599 to construct the Costilla Reservoir on the Costilla river in New Mexico. It was approved by the then state engineer on April 8, 1912, in the following language:

"This is to certify that I have examined the within application for a permit to appropriate the public waters of the Territory of New Mexico, and hereby approve the same.

"This application is approved subject to all prior valid rights to the use of water of this stream system including those acquired by beneficial use on the Costilla and

---

[1] Hereinafter called the Water Company.

tributaries as set forth in decisions of the courts; also, provided the total amount that can be appropriated through this permit shall not be in excess of 20,750 acre feet per annum, applicant, however, may appropriate in addition not to exceed 10,000 acre feet per annum of water, which may be conserved by a proper distribution and beneficial use of the quantity being diverted by those specified in the court decrees above mentioned."

The Costilla Reservoir was completed in 1920 and on April 7, 1920, the Water Company applied for final inspection thereof in accordance with the provisions of § 30, ch. 49, N.M.S.L.1907, § 151-139, N.M.S.A. 1929. Since its completion it has been used each year to store water from the Costilla river.

The Costilla Reservoir was formed by the construction of a dam across the river channel high up in the mountains. The water is discharged from the reservoir into the natural channel of the Costilla river and is permitted to flow down such channel until it reaches the plains, known as the San Luis Valley, where it is diverted from the river. Application for Permit No. 599 described the above method of handling the water and stated it would be diverted from the river by the Costilla canal.

On January 30, 1920, the Water Company filed with the then State Engineer of New Mexico its application for Permit No. 1360 for permission to construct such canal, to be known as the Cerro Ditch. It was approved by the state engineer on January 19, 1921, in the following language: "This application is approved provided it is not exercised to the detriment of any others having prior valid and existing rights to the use of the water of this stream system, and in accordance with the terms of the letter of even date, to the applicant, which letter, is by this reference made a part hereof as though set out herewith in full."

The letter referred to, in part, read: "* * * with the further proviso that the said waters herein above approved for the use of irrigation of the land under this project shall be used only on lands situated within the boundaries of the State of New Mexico as per the filing map attached to application for Permit No. 1360 and on file in this office, and shall include the waters covered by Permit No. 599, said Permit and this application being considered jointly herein."

The Cerro Ditch heads at a diversion dam in New Mexico where the river reaches the plains and extends across the state line into Colorado.

The Costilla Reservoir and Cerro Ditch were constructed primarily to effect the appropriation of unappropriated water of the Costilla river for irrigation of lands in New Mexico.

The three reservoirs of the Water Company are the only storage reservoirs under the Costilla river and no water therefrom is stored other than in such reservoirs.

Shortly after the Costilla Reservoir was completed it was discovered that in ordinary years there would not be sufficient water available in the Costilla river, in addition to the water for which earlier priorities existed under the direct ditches, to fill both the Costilla Reservoir and the Eastdale Reservoirs. Because the Costilla Reservoir is situated high in the mountains in a rocky canyon, and the Eastdale Reservoirs are situated on the level plains at lower altitudes, the loss by evaporation and seepage is considerably less from the Costilla Reservoir than from the Eastdale Reservoirs. Shortly after the completion of the Costilla Reservoir, the Water Company began the practice of making the initial storage of water attributable to the priorities of the Eastdale Reservoirs in the Costilla Reservoir, holding such water in that reservoir until about the time it was needed for irrigation and then letting the water down the stream and through the Cerro Ditch for storage in the Eastdale Reservoirs in small quantities, thus utilizing the Costilla Reservoir as the storage reservoir and the Eastdale Reservoirs as regulating reservoirs. The foregoing method of initial storage in Costilla Reservoir of water attributable to the priorities of the Eastdale Reservoirs is a practical operation and results in the conservation and more efficient utilization of water. It does not injure any other appropriator. As a result, a greater amount of land and land at higher elevations in Colorado are being irrigated with the same amount of water. All of such water so initially stored and used is attributable to and used under the priorities of the Eastdale Reservoirs and no part thereof is attributable to the appropriations under the permits.

Under the foregoing method of handling the water, a small but prosperous agricultural community has grown up in Costilla County, Colorado. More than

2,000 acres of land in the neighborhood of the town of Jaroso, Colorado, have been annually irrigated with such water. The future existence of the community is dependent on the continuation of such method of handling the water and such method does not adversely affect the rights of any water user from the Costilla river.

From time to time the Water Company made application to the State Engineer of New Mexico for extensions of time in which to complete the appropriation of water under the permits.[2]

In the affidavits filed with the applications for extensions from January 25, 1924, to April 6, 1935, inclusive, mention was made of the use of water by colonists, who had settled upon the lands to be irrigated under the permits, and mention was also made of the temporary use of water not needed on the lands designated in the permits, by the owners of other ditches not embraced in the Water Company's irrigation system.

On April 27, 1937, the State Engineer of New Mexico wrote a letter to the Water Company, in which he, in part, stated: "Some years ago the San Luis Water and Power Company as an emergency measure applied water from the Costilla Reservoir in New Mexico upon certain lands within Colorado in the vicinity of Jaroso. However, it was distinctly understood that such use in Colorado was to be temporary only, pending the development of an adequate water supply for the Colorado lands and the placing of farmers upon the New Mexico lands."

The application of water from the Costilla Reservoir to lands in the vicinity of Jaroso was not temporary and was not the temporary use referred to in such affidavits. It was a permanent policy adopted by the Water Company to avoid waste and conserve water.

No conditions were imposed in the extensions granted under the applications filed from January 16, 1918, to April 6, 1935, both inclusive. The applications filed May 6, 1937, were not promptly acted upon by the state engineer, and on July 7, 1938, the Water Company filed new applications,[3] which were granted by the state engineer on November 18, 1938. In granting the last-mentioned extensions, the state engineer undertook to impose the condition that the waters from the Costilla river should not be applied on lands outside the state of New Mexico. The applications of November 13, 1940, have not been acted upon by the state engineer.

On August 31, 1940, the State Engineer of New Mexico issued the following order:

---

[2] "The dates of the said applications for extensions of time * * * were as follows: Under Permit 599: January 16, 1918, March 12, 1919, January 25, 1924, March 19, 1926, January 28, 1929, April 7, 1931, April 20, 1933, April 6, 1935, May 6, 1937, July 7, 1938, November 13, 1940; and under Permit No. 1360: January 25, 1924, January 28, 1929, April 7, 1931, April 20, 1933, April 6, 1935, May 6, 1937, July 7, 1938, November 13, 1940. * * *

"The grounds, upon which said application for extension of time dated January 16, 1918, was made, were that the shortness of the season due to the high altitude of Costilla Reservoir together with unexpected engineering difficulties had delayed the completion of the work.

"The grounds, upon which said application for extension of time dated March 12, 1919, was made, were that there had been delay in constructing the dam on the Costilla Reservoir due to difficulty in getting labor and because of heavy rains which made it impossible to handle the material for the dam.

"The grounds, upon which said applications for extensions of time dated respectively, January 25, 1924, March 19, 1926, January 28, 1929, April 7, 1931, April 20, 1933, and April 6, 1935, were based, were that the physical works under Permits 599 and 1360 had been completed; that every effort had been made to secure colonists; that some colonists had been secured and had begun the application of water under said permits to land described in the permits; that on account of the agricultural depression beginning about 1920, it had not been possible to secure colonists for all of the lands, and that, accordingly, some temporary use of the water stored in the Costilla Reservoir had been made through ditches of other persons."

[3] The applications of May 6, 1937, and July 7, 1938, were predicated on substantially the same grounds as the prior applications. Each was accompanied by an affidavit which described in detail the method which had been adopted by the Water Company for handling the waters of the Costilla river and the reasons therefor and the temporary use of excess water used by the owners of other ditches.

"It is hereby ordered:

"That the San Luis Water and Power Company cease storing in the Costilla Reservoir in the state of New Mexico all Eastdale Reservoir No. 1 and Eastdale Reservoir No. 2 water, storage for which is in the State of Colorado.

"That water for the Eastdale Reservoir No. 1 and the Eastdale Reservoir No. 2 shall not be diverted through any canals with headgates in New Mexico.

"That stored water in the Costilla Reservoir released shall be used only on lands in the State of New Mexico, and under no conditions shall be delivered to lands in the State of Colorado."

The original points of diversion for the Eastdale Reservoirs Nos. 1 and 2 and as fixed by the decree of February 11, 1935, were located in Colorado.

In order to carry out the new method of handling the water, the Water Company changed the points of diversion, storage, and use of the water attributable to the appropriations under the Eastdale Reservoirs.

█ Colorado and New Mexico have the same basic water law. Since an early day the doctrine of appropriation, known as the Colorado doctrine, has been recognized in Colorado and New Mexico. The common-law rule respecting riparian rights in flowing water never obtained therein. It was deemed inapplicable to their situation and climatic conditions. The earliest settlers gave effect to a different rule whereby the waters of the streams were regarded as open to appropriation for irrigation, mining, and other beneficial purposes. As between different appropriations from the same stream, the first in time is deemed superior in right. This doctrine of appropriation, prompted by necessity and formulated by custom, received early legislative recognition in the territories of Colorado and New Mexico and when those states were admitted into

the Union, it received further sanction in their constitutions and statutes and their courts have uniformly enforced it.[4]

█ The cardinal rule of the doctrine is that priority of appropriation gives superiority of right. It is not less applicable to interstate streams and controversies than to others and where controversies arise between appropriators from the same stream, but in different states recognizing the doctrine of appropriation, their rights should be judged by the rule of priority.[5]

It follows that under the allegations of the complaint, as amended, the water rights under the Eastdale Reservoirs are superior in right to the water rights in process of consummation under the permits.

█ A water right may be acquired under the doctrine of prior appropriation by the diversion of water at a point on a stream in one state and its application to beneficial use on lands in another state where the stream flows in both states.[6]

In 1907, New Mexico adopted a comprehensive statute on the law of waters. Ch. 49, N.M.S.L. 1907, §§ 151-101 to 151-178, N.M.S.A. 1929. The statute codifies the Colorado doctrine, prescribes the procedure for effecting appropriations through applications for permits made to and granted by the state engineer, and provides for the issuance by the state engineer, upon the completion of the physical works and the application of the water to beneficial use, of a license to appropriate water.

Section 45 of ch. 49, supra, as amended by § 18, ch. 126, N.M.S.L. 1941, provides that an appropriator of water may, with the approval of the state engineer, change the place of diversion, storage, or use where such changes can be made without detriment to existing rights.

█ In Colorado, §§ 104 and 105, ch. 90, Colo.Stat.Ann.1935, provide a procedure in cases where the place of diver-

---

[4] State of Wyoming v. State of Colorado, 259 U.S. 419, 458, 459, 42 S.Ct. 552, 66 L.Ed. 999; Coffin v. Left Hand Ditch Co., 6 Colo. 443, 446; Snow v. Abalos, 18 N.M. 681, 140 P. 1044; Farmers' Development Co. v. Rayado Land & Irr. Co., 28 N.M. 357, 213 P. 202; Yeo v. Tweedy, 34 N.M. 611, 286 P. 970; Wiel, Water Rights in the Western States, 3d Ed., Vol. 1, § 18.

[5] State of Wyoming v. State of Colorado, 259 U.S. 419, 470, 42 S.Ct. 552, 66 L.Ed. 999; Conant v. Deep Creek

and Curlew Val. Irrigation Co., 23 Utah 627, 631, 66 P. 188, 90 Am.St.Rep. 721; Willey v. Decker, 11 Wyo. 496, 534, 535, 73 P. 210, 100 Am.St.Rep. 939; Taylor v. Hulett, 15 Idaho 265, 271, 97 P. 37, 19 L.R.A.,N.S., 535; Howell v. Johnson, C.C.Mont., 89 F. 556; Hoge v. Eaton, C.C.Colo., 135 F. 411; Morris v. Bean, C.C.Mont., 146 F. 423; Bean v. Morris, 9 Cir., 159 F. 651.

[6] Willey v. Decker, 11 Wyo. 496, 73 P. 210, 221, 222, 100 Am.St.Rep. 939.

sion has been fixed by a prior decree of adjudication, whereby a decree may be obtained from the court which entered the decree of adjudication permitting such place of diversion to be changed. Section 105, supra, provides that a decree shall be entered permitting the change prayed for, unless it appear that such change will injuriously affect the vested rights of others. The provisions of §§ 104 and 105, supra, apply only to the case of a water right already adjudicated.[7]

■ However, a water right is a property right and inherent therein is the right to change the place of diversion, storage, or use of the water if the rights of other water users will not be injured thereby.[8] Hence, the statutes above referred to are a recognition rather than a grant of the right to make such changes and they merely lay down a procedure whereby it may be determined whether such changes can be effected without injuriously affecting the rights of other users.[9]

■ Moreover, the water statutes of Colorado and New Mexico have no extraterritorial effect.[10] The State Engineer of New Mexico has no jurisdiction to authorize the owner of a water right for the irrigation of lands in Colorado to change the places of diversion and storage from points in Colorado to points in New Mexico. Neither has a court of Colorado, which has entered an original decree of adjudication, jurisdiction to authorize a change in the places of diversion and storage from points in Colorado to points in New Mexico.[11]

■ It follows that the Water Company had the right to change the places of diversion and storage of the water rights ad-judicated to the Eastdale Reservoirs from points in Colorado to points in New Mexico, provided such changes could be effected without injuriously affecting the rights of other water users from the Costilla river; and it was not necessary for it to obtain the approval of such changes by the New Mexico State Engineer or of the Colorado court which entered the decrees of adjudication.

■ Furthermore, we have made a careful examination of the statutes of New Mexico defining the powers and duties of the state engineer and we find nothing therein granting him authority to issue the challenged order, even were it necessary, which we do not concede, to obtain his consent to change such places of diversion and storage. Section 26, ch. 126, N.M.S.L.1941, § 77-411, N.M.S.A.1941, enacted after such order was issued, undertakes to grant the state engineer power to control the diversion and distribution of water from interstate streams when certain facts exist. But such facts, which under the statute are a prerequisite to the exercise of the power, do not exist in the instant case. Hence, the statute negatives any authority in the state engineer to exercise control over the diversion and storage of water in New Mexico for beneficial use on land situated in Colorado.

■ To the extent that the water attributable to the earlier priorities of the Eastdale Reservoirs rises above the dam of the Costilla Reservoir, it must be permitted to flow through the discharge gates of the dam from time to time, to satisfy such earlier priorities. Hence, the question presented is simply this, shall it be permitted to flow through the outlet of the reservoir as it reaches that point in the stream, or shall it, when excess space is available in

---

[7] Phillips Inv. Co. v. Cole, 27 Colo. App. 540, 150 P. 331, 333.

[8] Murphy v. Kerr, D.C.N.M., 296 F. 536, 541; Strickler v. City of Colorado Springs, 16 Colo. 61, 26 P. 313, 316, 25 Am.St.Rep. 245; Fuller v. Swan River Placer Min. Co., 12 Colo. 12, 19 P. 836, 838, 839; Greer v. Heiser, 16 Colo. 306, 26 P. 770; Kinney on Irrigation, 2d Ed., § 857, p. 1501; Weil, Water Rights in the Western States, 3d Ed., Vol. 1, §§ 501, 504, 505, 508.

[9] Ashenfelter v. Carpenter, 37 Colo. 534, 87 P. 800; Wadsworth Ditch Co. v. Brown, 39 Colo. 57, 88 P. 1060, 1061; Lower Latham Ditch Co. v. Bijou Irr. Co., 41 Colo. 212, 93 P. 483. 484.

In the last-cited case, the court said: "The right to change the point of diversion, or place of use, of water which has been obtained as the result of an appropriation, is one of the incidents of ownership, and existed and was exercised in this state long before this remedial statute was enacted."

[10] Willey v. Decker, 11 Wyo. 496, 73 P. 210, 222, 223, 100 Am.St.Rep. 939.

[11] Turley v. Furman, 16 N.M. 253, 114 P. 278, 280; Lamson v. Vailes, 27 Colo. 201, 61 P. 231, 232; Willey v. Decker, 11 Wyo. 496, 73 P. 210, 222, 223, 100 Am.St.Rep. 939.

the Costilla Reservoir, be stored therein initially, in order to decrease loss from evaporation and seepage and accomplish a more efficient utilization of the water? The question whether the Water Company could have originally constructed a reservoir in New Mexico primarily designed for the storage of water attributable to the priorities of the Eastdale Reservoirs without the consent of the New Mexico State Engineer manifested by a permit issued by him is not before us. The Water Company constructed the Costilla Reservoir in good faith, believing there was available unappropriated water which would consume its storage space. That belief was partially based upon reports and records of the state engineer's office. The Costilla Reservoir has been constructed. Excess storage space is available. The question is whether the Water Company may make an advantageous use of that excess storage, or shall it be permitted to lie idle. It would seem that if the Costilla Reservoir will store all the water available for appropriation from the Costilla river under the permits, and will provide in addition thereto storage space which can be advantageously utilized to store initially the water attributable to the Eastdale Reservoirs' priorities, and such initial storage can be made therein without adversely affecting the rights of other water users from the stream, including the users under the permits, and without in anywise rendering the works unsafe, such initial storage should be permitted. Likewise, if such water can be carried through the Cerro Ditch, without adversely affecting the rights of other users from the stream, such additional use should be permitted.

The Costilla Dam and Reservoir should not be used for the diversion and storage of water, and the Cerro Ditch should not be used for carrying such water, for beneficial use on land situated in Colorado under water rights prior in time and superior in right to the water rights being consummated under the permits in a manner that will adversely affect the water rights of water users in New Mexico. Against such diversion, storage, and carrying that will adversely affect the water rights of water users in New Mexico, that state and such users have a remedy but it is a remedy, we think, which must be obtained through a judicial proceeding and vindicated by a judicial decree and not by an order of the state engineer made without notice or hearing.

We conclude that under the facts alleged in the complaint, as amended, the receiver was entitled to the injunctive relief prayed for.

The judgment is reversed and the cause remanded with instructions to reinstate the action and overrule the motion to dismiss.